UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

STEPHEN REISE

v.   C.A. No. 04 - 158 ML

A.T. WALL, et al.

### Report and Recommendation

Jacob Hagopian, Senior United States Magistrate Judge

Stephen Reise ("Reise" or "plaintiff"), *pro se*, an inmate legally incarcerated at the Rhode Island Department of Corrections ("DOC"), Adult Correctional Institutions, filed a Complaint and named as defendants Ashbel T. Wall, Joseph Marocco, Dr. Scott Allen, Dr. Baruh Motola, and Melvin White, current or former employees or officials at the DOC. Currently before the Court is Dr. Motola's motion for summary judgment pursuant to Fed. R. Civ. P. 56(c). Plaintiff has objected thereto. This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for a report and recommendation. For the reasons that follow, I recommend that Dr. Motola's motion for summary judgment be granted. A hearing was not necessary.

### Undisputed Facts

On or about October 30, 1999, plaintiff began his incarceration at the Rhode Island Department of Corrections. On November 24, 1999, Dr. Motola conducted a physical examination of the plaintiff. Thereafter, plaintiff was seen numerous times by various physicians while incarcerated.

In July 2001, following complaints by other inmates of his snoring, plaintiff visited Dr. Motola. At that time, Dr. Motola ordered that the plaintiff have a polysomnogram, often referred

1

to as a "sleep test." The sleep test was conducted at the DOC on August 21 to August 22, 2001 and the results were interpreted by Dr. Richard Millman, Director of the Sleep Disorders Centers of Lifespan Hospitals. Dr. Millman faxed his diagnosis to the DOC on September 12, 2001, determining that the plaintiff suffered from "a severe degree of obstructive sleep apnea." Dr. Millman recommended various options for treatment, including a Continuous Positive Airway Pressure ("CPAP") machine. Dr. Millman did not request or order that the plaintiff be seen by him further.

After receiving the diagnosis from Dr. Millman, a written notation was made on the diagnosis by Dr. Motola. There is a dispute as to what the notation reads. Plaintiff alleges that the notation reads "to be seen in <u>that</u> clinic," referring to a clinic at Lifespan Hospital. Dr. Motola, however, has indicated that the notation reads "to be seen in <u>the</u> clinic," and Dr. Motola indicated that he was referring to the DOC's in-house medical clinic.

On September 27, 2001, plaintiff learned of his diagnosis from another DOC doctor, defendant Dr. Allen. Dr. Allen ordered a CPAP machine to treat plaintiff's condition. Plaintiff subsequently received the machine and used it nightly.

On or about January 2003, plaintiff claims that the CPAP machine needed replacement parts. Plaintiff, however, never directly informed Dr. Motola that he needed replacement parts for his CPAP machine, nor did the plaintiff bring any additional medical issues relating his sleep apnea to Dr. Motola's attention.

Plaintiff has brought suit, principally alleging an Eighth Amendment violation, applicable to the states through the Fourteenth Amendment. Plaintiff claims that Dr. Motola failed to provide adequate medical care, including Dr. Motola's alleged failure to promptly provide replacement parts

for his CPAP machine. Plaintiff also alleges claims under the Fifth and Ninth Amendments and a state-law claim of medical malpractice.

## Discussion

### A. Summary Judgment Standard

Summary judgment's role in civil litigation is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Garside v. Osco Drug, Inc., 895 F.2d. 46, 50 (1st Cir. 1990). Summary judgment can only be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.

Rule 56 has a distinctive set of steps. When requesting summary judgment, the moving party must "put the ball in play, averring 'an absence of evidence to support a nonmoving party's case.'" Garside, 895 F.2d at 48 (quoting Celotex v. Catrett, 477 U.S. 317, 325 (1986)). The nonmovant then must document some factual disagreement sufficient to deflect brevis disposition. Not every discrepancy in the proof is enough to forestall summary judgment; the disagreement must relate to some issue of material fact. See Anderson v. Liberty Lobby Inc., 477 U.S. 242, 247-48 (1986).

On issues where the nonmovant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion. See id. at 256-57. This evidence "can not be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a fact finder must resolve at an ensuing trial." Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989). Evidence that is merely colorable or is not significantly probative cannot deter summary judgment. Anderson, 477 U.S. at 256-57.

3

**B. 42 U.S.C. § 1983**

Plaintiff has brought suit under 42 U.S.C. § 1983. Section 1983 provides, in pertinent part:

> Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. In order to maintain a section 1983 action, the conduct complained of must be committed by a "person" acting under color of state law and the conduct must have deprived the plaintiff of a constitutional right or a federal statutory right. Gomez v. Toledo, 446 U.S. 635, 640; see also Baker v. McCollan, 443 U.S. 137 (1979) (constitutional deprivations); Maine v. Thiboutot, 448 U.S. 1 (1980) (statutory deprivations). Here, there is no dispute that Dr. Motola acted under the color of state law. However, Dr. Motola asserts that the undisputed facts demonstrate that no Constitutional provisions were offended and that he is entitled to summary judgment. I agree.

**1. Plaintiff's Eighth and Fourteenth Amendment Claims.**

Plaintiff's primary basis for relief against Dr. Motola falls under the Eighth Amendment, applicable to the states via the Fourteenth Amendment. Plaintiff claims that Dr. Motola failed to provide adequate medical care, including Dr. Motola's alleged failure to provide in a timely fashion replacement parts for plaintiff's CPAP machine.

The Eighth Amendment provides: "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. The cruel and unusual punishments clause of the Eighth Amendment was designed to protect those convicted of crimes and limits the type of punishment that is imposed. Ingraham v. Wright, 430 U.S. 651, 664

4

(1977). After an individual is incarcerated, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment. Whitely v. Albers, 475 U.S. 312, 318-19 (1986). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause... ." Id. What is required to establish the unnecessary and wanton infliction of pain varies according to the nature of the alleged Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9 (1992).

Here, plaintiff alleges Dr. Motola failed to provide adequate medical care. The failure to provide medical attention to an injured prisoner can be an Eighth Amendment violation. See e.g. Layne v. Vinzant, 657 F.2d 468 (1st Cir. 1981); Rosen v. Chang, 758 F.Supp. 799 (D.R.I. 1991). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). In order to find deliberate indifference, there must be more than a showing that a physician was negligent in diagnosing or treating a patient. Id. Such negligence, if present, does not rise to the level of a Constitutional violation simply because the plaintiff is incarcerated. Id. Officials must intentionally delay or completely deny access to medical care. Id at 104-05.

Deliberate indifference to an inmate's medical needs requires a two part inquiry. First, the court must ask whether the inmate's medical needs are objectively serious (objective prong). The illness must have "been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Mahan v. Plymouth County House of Corrections, 64 F.3d 14, 18 (1st Cir 1995). Second, there must be an element of a culpable state of mind or reckless disregard rising to the level of criminal recklessness on the part of the defendant (subjective prong). Farmer v. Brennan, 511 U.S. 825, 826 (1994). The

"Eighth Amendment outlaws cruel and unusual punishments, ... and the failure to alleviate a significant risk that an official should have perceived but did not, while no cause for commendation, cannot be condemned as the infliction of punishment...." Id. Only when both prongs are met, can Dr. Motola be liable for an Eighth Amendment violation.

### a. Objective Prong

Here plaintiff has set forth evidence demonstrating that he has an objectively serious medical need. Plaintiff has demonstrated that his condition, sleep apnea, has been diagnosed by Dr. Millman as "severe." See Defendant Motola's Exhibit A. Moreover, Dr. Millman indicated several treatment options to alleviate the plaintiff's severe condition. See id. Thus, plaintiff has set forth sufficient evidence to sustain his burden to demonstrate a serious medical need for Eighth Amendment purposes.

### b. Subjective Prong

Since plaintiff has demonstrated that he has a serious medical need, the Court must next inquire into whether the plaintiff can demonstrate that Dr. Motola was deliberately indifferent to that need. In other words, plaintiff must set forth evidence that Dr. Motola had a culpable state of mind or reckless disregard rising to the level of criminal recklessness to plaintiff's serious medical need. See Farmer, 511 U.S. at 826.

In his Complaint, plaintiff claims that the delay in providing him with replacement parts for his CPAP machine constituted deliberate indifference. Plaintiff attempts to connect Dr. Motola to the alleged failure to provide such parts by identifying an appointment he had at the DOC's medical clinic regarding back pain on April 24, 2003. In the course of this appointment, plaintiff claims he spoke to a DOC Nurse about the status of his replacement parts for his CPAP machine. According

to plaintiff, the nurse indicated that the parts were requested. Also according to plaintiff, during his exchange with the nurse, Dr. Motola was present and presumably overheard the conversation. While this may be true, plaintiff <u>never</u> spoke directly to Dr. Motola regarding his alleged need for replacement parts, nor did the plaintiff relay to Dr. Motola any indication that his health was in jeopardy or his symptoms worsened due to the lack of timely replacement parts. The undisputed facts demonstrate the plaintiff and defendant Motola had <u>no</u> direct communications regarding plaintiff's request for replacement parts.

Even assuming *arguendo* that Dr. Motola did overhear the conversation, no evidence has been set forth by the plaintiff demonstrating that the plaintiff's condition was worsening or that the plaintiff had an increase in symptoms. Indeed, plaintiff made no complaints to Dr. Motola regarding his sleep apnea. Dr. Motola cannot be deliberately indifferent to something of which he did not know. See Farmer, 511 U.S. at 826.

Next, plaintiff attempts to establish conduct rising to the level of deliberate indifference by pointing to a notation which defendant Motola made on Dr. Millman's written diagnosis. The notation reads "9/12/01 To be seen in [the or that] clinic." Plaintiff contends this was an instruction by either Dr. Motola or Dr. Millman to schedule a follow-up examination with Dr. Millman. Plaintiff argues that the failure to schedule such a follow-up examination with Dr. Millman demonstrates deliberate indifference.

While the parties dispute whether the notation reads "the" or "that," this is not a material dispute. The undisputed facts demonstrate that Dr. Millman did not write the notation, nor did Dr. Millman make any request or order that plaintiff be seen for a follow-up visit. See Deposition of Richard Millman, M.D., at 10 (12/15/04). The undisputed facts also demonstrate that Dr. Motola

7

made the notation to alert the DOC medical staff to schedule the plaintiff for an appointment in the DOC's medical clinic. See Defendant Baruh Motola's Memorandum of Law in Support of his Motion for Summary Judgment, Exhibit B at ¶ e, f, g. Indeed, that is where the plaintiff was seen. Plaintiff met with Dr. Allen on September 27, 2001 to review Dr. Millman's diagnosis. No evidence demonstrates any malfeasance on the part of Dr. Motola with respect to this notation. Plaintiff has set forth no evidence demonstrating that Dr. Motola withheld medical treatment by failing to schedule a follow-up appointment with Dr. Millman.

Plaintiff further claims that Dr. Motola concealed from him the true severity of his sleep apnea. Even if Dr. Motola had failed to fully inform plaintiff of the severity of his sleep apnea, no evidence has been presented to indicate that such a failure would rise to the level of deliberate indifference. Plaintiff's condition was diagnosed and he was provided equipment with which to treat the symptoms.

Plaintiff failed set forth any evidence whatsoever to demonstrate that Dr. Motola had a culpable state of mind or reckless disregard to the plaintiff's medical needs. See Farmer, 511 U.S. at 826. Plaintiff received treatment for his medical condition. Accordingly, I recommend that Dr. Motola's motion for summary judgment be granted on plaintiff's Eighth and Fourteenth Amendment claims.

### 2. Plaintiff's Claims under the Fifth and Ninth Amendments.

In his Complaint, plaintiff makes vague references to claims under the Fifth and Ninth Amendments. However, no evidence, nor any argument has been presented to sustain claims under these constitutional provisions. Accordingly, I recommend that Dr. Motola's motion for summary judgment be granted on plaintiff's Fifth and Ninth Amendment claims.

### 3. Plaintiff's Constitutional Claims regarding the Policies and Practices at the Rhode Island Department of Corrections.

Plaintiff also makes references to policies and / or practices at the Department of Corrections regarding a variety of aspects of inmate's lives. What plaintiff fails to do, however, is connect Dr. Motola to the policies or practices. That is, plaintiff fails to demonstrate that Dr. Motola has promulgated the challenged policies or is involved in any way in the adoption of those policies. Without personal involvement, Dr. Allen cannot be liable. Lopez Morales v. Otero de Ramos, 725 F.Supp. 106, 106-107 (D.P.R. 1989). A theory of *respondeat superior*, if that is what plaintiff alleges, will not suffice. Polk County v. Dodson, 454 U.S. 312, 325 (1981).

Accordingly, to the extent that plaintiff seeks to hold Dr. Motola liable, under various theories, for wrongful policies and / or practices, Dr. Motola's motion for summary judgment should be granted on these claims as well. I so recommend.

### C. Plaintiff's State Law Medical Malpractice Claim

Finally, plaintiff asserts a claim under Rhode Island state law for medical malpractice. In medical malpractice actions, a plaintiff must establish the appropriate standard of care and a deviation therefrom by presenting competent medical expert testimony. Wilkenson v. Vesey, 295 A.2d 676 (R.I. 1972). The expert "must measure the care that was administered against the degree of care and skill ordinarily employed in like cases by physicians in good standing engaged in the same type of practice in similar localities." Richardson v. Fuchs, 523 A.2d 445, 448 (R.I. 1987)(citations omitted). The expert must explain "what proper procedures and alternatives are available to a physician ... [and] why the procedures followed by the defendant physician were negligent, and not legitimate alternatives." Sousa v. Chaset, 519 A.2d 1132, 1135 (R.I. 1987).

Here, plaintiff has failed to identify an expert to testify on his behalf, and failed to otherwise demonstrate that he possesses any evidence of the appropriate standard of care, any evidence demonstrating a deviation from the standard of care, or any evidence demonstrating causation to any injury. See e.g. Schenck v. Roger Williams General Hospital, 382 A.2d 514, 516-17 (R.I. 1977); Boccasile v. Cajun Music Limited, 694 A.2d 686, 690 (R.I. 1997). Without demonstrating that he possesses such evidence, plaintiff's medical malpractice claim cannot go forward. Plaintiff may not rely upon his own speculative conclusions on how he thinks he should have been treated. Accordingly, Dr. Motola's motion for summary judgment should be granted on plaintiff's medical malpractice claims. I so recommend.

## Conclusion

For the reasons set forth above, I recommend that Dr. Motola's motion for summary judgment be granted on all of plaintiff's claims. Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. Fed. R. Civ. P. 72(b); Local Rule 32. Failure to file timely, specific objections to this report constitutes waiver of both the right to review by the district court and the right to appeal the district court's decision. United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1986)(per curiam); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

Jacob Hagopian
Senior United States Magistrate Judge
June 2, 2005