**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**STEPHEN REISE**

**v.** **C.A. No. 04-158 ML**

**A.T. WALL, et al**

**Report and Recommendation**

Jacob Hagopian, Senior United States Magistrate Judge

Stephen Reise ("Reise" or "plaintiff"), *pro se*, an inmate legally incarcerated at the Rhode Island Department of Corrections, Adult Correctional Institutions, filed a Complaint and named as defendants Ashbel T. Wall, Joseph Marocco, Dr. Scott Allen, Dr. Baruh Motola, and Melvin White, past or current employees or officials at the R.I. Department of Corrections. Presently before the Court is defendant Dr. Scott Allen's ("Allen" or "defendant") motion for summary judgment pursuant to Fed. R. Civ. P. 56(c). Plaintiff filed an objection thereto. This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for a report and recommendation. For the reasons that follow, I recommend that Dr. Allen's motion for summary judgment be granted. A hearing was not necessary.

**Undisputed Facts**

Unless otherwise noted, the following are undisputed facts taken from the submissions of the parties in this matter:

Plaintiff Stephen Reise is an inmate legally incarcerated at the Rhode Island Department of Corrections ("DOC"), Adult Correctional Institutions. At all times relevant to this matter, defendant Dr. Scott Allen was the medical director at the DOC.

In the summer of 2001, plaintiff visited Dr. Baruh Motola, another DOC physician, following complaints by other inmates of his chronic snoring. As a result of this consultation, Dr. Motola ordered a polysomnogram, often called a "sleep test." The sleep test was conducted at the DOC on August 21 to August 22, 2001. The results were interpreted by Dr. Richard Millman, Director of the Sleep Disorders Centers of Lifespan Hospitals. Dr. Millman provided the DOC a written diagnosis on September 12, 2001, determining that the plaintiff suffered from "a severe degree of obstructive sleep apnea." In his written diagnosis, Dr. Millman recommended various options for treatment, including a Continuous Positive Airway Pressure ("CPAP") machine.

After receiving the written diagnosis from Dr. Millman, a notation was made on the diagnosis by Dr. Motola. Plaintiff contends that the notation reads "to be seen in <u>that</u> clinic," referring to a clinic at Lifespan Hospital. Dr. Motola, however, has indicated that the notation reads "to be seen in <u>the</u> clinic." Dr. Motola has indicated that he was referring to the DOC's in-house medical clinic.

Thereafter, on September 27, 2001, plaintiff met with Dr. Allen in the DOC's in-house clinic, who informed plaintiff of Dr. Millman's diagnosis. At that time, Dr. Allen discussed treatment options with the plaintiff, ultimately ordering a CPAP machine for the plaintiff. Plaintiff subsequently received the machine and used it nightly and when napping.

After the September 27, 2001 meeting with Dr. Allen, plaintiff had no interaction or communication with Dr. Allen until February 26, 2004. Then, on February 26, 2004, plaintiff wrote a letter to Dr. Allen informing him that certain parts on the CPAP machine needed to be replaced due to normal wear. Plaintiff, however, did not seek medical treatment from Dr. Allen in the letter.

By letter of March 2, 2004, Dr. Allen informed plaintiff that since the letter did not seem

medical in nature, he referred the matter to the Associate Director of Health Care Services, Joseph Marocco. In this letter, Dr. Allen states that should plaintiff "feel his medical concerns are not being reasonably addressed," to contact him again. Between February 26, 2004 and the filing of the instant suit, plaintiff did not contact Dr. Allen.

Plaintiff has brought suit alleging a variety of claims. Plaintiff's chief claim against Dr. Allen falls under the Eighth Amendment. Plaintiff alleges that Dr. Allen failed to provide adequate medical care. Plaintiff also alleges that Dr. Allen committed medical malpractice. Plaintiff, however, has failed to set forth any evidence to substantiate any claim whatsoever against Dr. Allen.

## Discussion

### A. Summary Judgment Standard

Summary judgment's role in civil litigation is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990). Summary judgment can only be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Rule 56 has a distinctive set of steps. When requesting summary judgment, the moving party must "put the ball in play, averring 'an absence of evidence to support a nonmoving party's case.'" Garside, 895 F.2d at 48 (quoting Celotex v. Catrett, 477 U.S. 317, 325 (1986)). The nonmovant then must document some factual disagreement sufficient to deflect brevis disposition. Not every discrepancy in the proof is enough to forestall summary judgment; the disagreement must relate to some issue of material fact. See Anderson v. Liberty Lobby Inc., 477 U.S. 242, 247- 48 (1986).

On issues where the nonmovant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion. See id. at 256-57. This evidence "can not be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a fact finder must resolve at an ensuing trial." Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989). Evidence that is merely colorable or is not significantly probative cannot deter summary judgment. Anderson, 477 U.S. at 256-57.

**B. 42 U.S.C. § 1983 Claims**

Plaintiff brought suit under 42 U.S.C. §1983. Section 1983 provides:

> Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.

In order to maintain a section 1983 action, the conduct complained of must be committed by a "person" acting under color of state law and the conduct must have deprived the plaintiff of a constitutional right or a federal statutory right. Gomez v. Toledo, 446 U.S. 635 (1980); see also Baker v. McCollan, 443 U.S. 137 (1979) (constitutional deprivations); Maine v. Thiboutot, 448 U.S. 1 (1980) (statutory deprivations). Here, there is no dispute that Dr. Allen acted under the color of state law. However, Dr. Allen asserts that the plaintiff has no evidence to sustain his claims. I agree.

**1. Plaintiff's Claims Under the Eighth and Fourteenth Amendment**

Plaintiff's primary basis for relief against Dr. Allen falls under the Eighth Amendment, applicable to the states through the Fourteenth Amendment. Plaintiff claims that Dr. Allen failed to

provide adequate medical care, including Dr. Allen's alleged failure to provide replacement parts for plaintiff's CPAP machine.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. The cruel and unusual punishments clause of the Eighth Amendment was designed to protect those convicted of crimes and limits the type of punishment that is imposed. Ingraham v. Wright, 430 U.S. 651, 664 (1977). After an individual is incarcerated, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment. Whitely v. Albers, 475 U.S. 312, 318-19 (1986). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause... ." Id. What is required to establish the unnecessary and wanton infliction of pain varies according to the nature of the alleged Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9 (1992).

Here, plaintiff alleges Dr. Allen failed to provide adequate medical care. The failure to provide medical attention to an injured prisoner can be an Eighth Amendment violation. See e.g., Layne v. Vinzant, 657 F.2d 468 (1st Cir. 1981); Rosen v. Chang, 758 F.Supp. 799 (D.R.I. 1991). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). In order to find deliberate indifference, there must be more than a showing that a physician was negligent in diagnosing or treating a patient. Id. Such negligence, if present, does not rise to the level of a Constitutional violation simply because the plaintiff is incarcerated. Id. Officials must intentionally delay or completely deny access to medical care. Id at 104-05.

Deliberate indifference to an inmate's medical needs requires a two part inquiry. First, the

court must ask whether the inmate's medical needs are objectively serious (objective prong). The illness must have "been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Mahan v. Plymouth County House of Corrections, 64 F.3d 14, 18 (1st Cir 1995). Second, there must be an element of a culpable state of mind or reckless disregard rising to the level of criminal recklessness on the part of the defendant (subjective prong). Farmer v. Brennan, 511 U.S. 825, 826 (1994). The "Eighth Amendment outlaws cruel and unusual punishments, ... and the failure to alleviate a significant risk that an official should have perceived but did not, while no cause for commendation, cannot be condemned as the infliction of punishment...." Id. Only when both prongs are met, can Dr. Allen be liable for an Eighth Amendment violation.

**a. Objective Prong**

Defendant Allen first contends that the plaintiff has no evidence to demonstrate a serious medical need. In support of this proposition, Dr. Allen argues that "at no time has Inmate Reise alleged that the deteriorated condition of the machine of which he has complained resulted in a *serious* medical need *mandating* treatment." See Defendant Scott Allen's Memorandum of Law in Support of Summary Judgment, at 7 (emphasis in original). However, the relevant inquiry is not whether a medical need was created by the lack of appropriate treatment, but rather whether the underlying medical need "has been diagnosed by a physician as mandating treatment." Mahan, 64 F.3d at 18.

Here plaintiff has set forth evidence demonstrating that he has a serious medical need. Plaintiff indicates that his condition, sleep apnea, has been diagnosed by Dr. Millman as "severe."

See Affidavit of Scott Allen, M.D. at ¶ 3, Statement of Undisputed Facts of Defendant Scott Allen at ¶ 7, and Plaintiff's Exhibit G. Moreover, Dr. Millman indicated several treatment options to alleviate the plaintiff's severe condition. See Plaintiff's Exhibit G. Thus, plaintiff has set forth sufficient evidence to sustain his burden to demonstrate a serious medical need for Eighth Amendment purposes.

**b. Subjective Prong**

Next, Dr. Allen argues that summary judgment is appropriate because the plaintiff cannot satisfy the second prong of the deliberate indifference standard. Dr. Allen contends that the plaintiff has no evidence to demonstrate that Dr. Allen was aware of a serious risk of substantial harm to plaintiff and consciously disregarded it.

In attempt to satisfy this requirement, plaintiff identifies two separate instances of contact with Dr. Allen, approximately two and a half years apart. The first instance is the consultation of September 27, 2001, when Dr. Allen informed plaintiff of Dr. Millman's diagnosis and ordered a course of treatment. Plaintiff, however, has failed to set forth any evidence demonstrating any sort of malfeasance that occurred from this first contact. Indeed, quite the contrary is true. During this consultation, the undisputed facts demonstrate that Dr. Allen reviewed Dr. Millman's diagnosis and Dr. Allen followed a treatment option offered by Dr. Millman.

Plaintiff complains that Dr. Allen did not fully apprise the plaintiff about the severity of his condition during this consultation, while Dr. Allen disputes this and indicates that it is his practice to do so. However, this dispute it immaterial to the issue at hand. The only question presented is whether Dr. Allen exhibited a reckless disregard for plaintiff's well-being. Plaintiff has produced no

evidence to support such a finding with respect to the September 27, 2001 consultation with Dr. Allen. Dr. Allen provided treatment and indeed, plaintiff made no complaints to Dr. Allen until 2004.

Plaintiff next identifies a second instance of contact with Dr. Allen as a basis for a finding of Eighth Amendment liability. On February 26 2004, plaintiff wrote a letter to Dr. Allen, requesting to have certain parts of his CPAP machine replaced. In response, Dr. Allen wrote to the plaintiff on March 2, 2004 informing him that since he was only requesting replacement parts, and not medical treatment, he was referring the matter to Joseph Marocco, Associate Director of Health Services. Dr. Allen directed the plaintiff to contact him again if he felt his medical needs were not being properly addressed. Plaintiff did not contact Dr. Allen again.

Although Dr. Allen was aware of plaintiff's sleep apnea, plaintiff has not set forth evidence to demonstrate that Dr. Allen had any reason to believe that plaintiff's condition was not under control or that Dr. Allen knew of any increase in plaintiff's symptoms due to the alleged delay in the replacement parts. Indeed, no where does the plaintiff indicate that his CPAP machine was not properly operating, resulting in an increase in symptoms. More importantly, no evidence presented indicates that Dr. Allen exhibited a reckless disregard to the plaintiff's medical needs.

Plaintiff also attempts to establish the subjective prong on Dr. Allen's part by pointing to a notation made on Dr. Millman's written diagnosis. Plaintiff argues that the notation was made by Dr. Millman and reads "9/12/01 to be seen in that clinic," referring to the clinic at Lifespan Hospital. Plaintiff alleges that he never was taken to such an appointment. However, the undisputed facts demonstrate that plaintiff's allegations regarding the notation are incorrect. The undisputed facts

demonstrate that this notation was not made by Dr. Millman and that Dr. Millman did not request or order that the plaintiff be seen in his clinic for a follow up visit. See Defendant Scott Allen's Statement of Undisputed facts, ¶ 8 ; See also Deposition Richard Millman, M.D. at 10. The notation was made by Dr. Motola, and Dr. Motola has indicated that he was referring to the in-house clinic at the DOC where, in fact, the plaintiff was seen and treated. See Defendant Baruh Motola's Memorandum of Law in Support of his Motion for Summary Judgment, Exhibit B at ¶ e, f, g.

In any event, plaintiff has failed to demonstrate any wrong-doing on the part of Dr. Allen. Plaintiff has set forth no evidence demonstrating that Dr. Allen has a culpable state of mind, akin to criminal recklessness, and intended to harm the plaintiff. See Farmer, 511 U.S. at 826. Since the plaintiff has produced no evidence demonstrating the subjective prong of the deliberate indifference standard, summary judgment should enter in favor of Dr. Allen on plaintiff's Eighth and Fourteenth Amendment claims. I so recommend.

**2. Plaintiff's Claims Under the Fifth and Ninth Amendments.**

In his Complaint, plaintiff makes reference to claims under the Fifth and Ninth Amendments. However, no evidence, nor any argument has been presented to sustain claims under these Constitutional provisions. Accordingly, I recommend that Dr. Allen's motion for summary judgment be granted on plaintiff's Fifth and Ninth Amendment claims.

**3. Plaintiff's Constitutional Claims regarding the Policies and Practices at the Rhode Island Department of Corrections.**

Plaintiff also makes references to policies and / or practices at the Department of Corrections regarding a variety of aspects of inmates' lives. What plaintiff fails to do, however, is connect Dr.

Allen to the policies or practices. That is, plaintiff fails to demonstrate that Dr. Allen has promulgated the challenged policies or is involved in any way in the adoption of those policies. Without personal involvement, Dr. Allen can not be liable. Lopez Morales v. Otero de Ramos, 725 F.Supp. 106, 106-107 (D.P.R. 1989). A theory of *respondeat superior*, if that is what plaintiff alleges, will not suffice. Polk County v. Dodson, 454 U.S. 312, 325 (1981).

Accordingly, to the extent that plaintiff seeks to hold Dr. Allen liable, under various theories, for wrongful policies and / or practices, Dr. Allen's motion for summary judgment should be granted on these claims as well. I so recommend.

**C. State Law Medical Malpractice Claims**

Next, Dr. Allen has moved for summary judgment on plaintiff's medical malpractice claims contending that the plaintiff has no evidence to sustain this claim. In medical malpractice actions, the plaintiff must establish the appropriate standard of care and a deviation therefrom by presenting competent medical expert testimony. Wilkenson v. Vesey, 295 A.2d. 676 (R.I. 1972). The expert "must measure the care that was administered against the degree of care and skill ordinarily employed in like cases by physicians in good standing engaged in the same type of practice in similar localities." Richardson v. Fuchs, 523 A.2d 445, 448 (R.I. 1987)(citations omitted). The expert must explain "what proper procedures and alternatives are available to a physician ... [and] why the procedures followed by the defendant physician were negligent, and not legitimate alternatives Sousa v. Chaset, 519 A.2d 1132, 1135 (R.I. 1987).

Here, plaintiff has failed to identify an expert to testify on his behalf, and failed to otherwise demonstrate that he possesses any evidence of the appropriate standard of care, any evidence

indicating a deviation from the standard of care, or any evidence demonstrating causation to any injury. Schenck v. Roger Williams General Hospital, 382 A.2d 514, 516 (R.I. 1977); Boccasile v. Cajun Music Limited, 694 A.2d 686, 690 (R.I. 1997). Without demonstrating that he possesses such evidence, plaintiff's medical malpractice claim cannot go forward. Accordingly, Dr. Allen's motion for summary judgment should be granted on plaintiff's medical malpractice claims. I so recommend.

**Conclusion**

For the reasons set forth above, I recommend that Dr. Allen's motion for summary judgment be granted. Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten days of its receipt. Fed. R. Civ. P. 72(b); Local Rule 32. Failure to file timely, specific objections to the report constitutes waiver of both the right to review by the district court and the right to appeal the district court's decision. United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1986)(per curiam); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

Jacob Hagopian
Senior United States Magistrate Judge
June 2, 2005