UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND Court

STEPHEN REISE PRO SE

VS. CASE NO. 04-0158 (ML)

ASHBEL T. WALL et. al.

## OBJECTION TO REPORT AND RECOMMENDATION IN GRANTING OF SUMMARY JUDGMENT TO THE DEFENDANT BARUH MOTOLA

Now comes the plaintiff, Stephen Reise Pro se, who objects to several findings or decisions of the Magistrate of the District Court of Rhode Island and specifically addresses each issue in turn as it was quoted in the Report and Rocommendation. Findings in the Report and Recommendations are typed in Bold, objections are in regular type face.

Pg. 2, Para 2 - **"After receiving the diagnosis from Dr. Millman a written notation was made on the diagnosis by Dr. Motola. There is a dispute as to what the notation reads. Plaintiff alleges that the notation reads "to be seen in that clinic", referring to the clinic at lifespan hospital. Dr. Motola, however, has indicated that the notation reads "to be seen in the clinic", and Dr. Motola indicated that he was referring to the DOC'S in-house medical clinic".**

OBJECTION- As underlined above it seems the defendant Motola's response has seem to have been given more weight as the Magistrate has used the words "has indicated", rather than "alleged" thus giving rise to credibility. The fact that Dr. Motola has indicated that I be seen in the supposed in-house clinic is no more than an allegation. The fact that I was seen at the Medium One infirmary, which to my and many others knowledge has never been referred to as a clinic, is a matter apart from the issue at hand. Upon being diagnosed, the next step according to medical publications as to the established standard of care is a follow up polysomnogram. This is done to adjust the pressures while under CPAP therapy to relieve the apnea events. This is why I believe and the evidence supports that Dr. Motola should have ordered this test.

In fact I allege this was the true meaning of his notation, despite how clumsily it has been asked to be construed, this court seems to give more weight and credibility to the defendant in construing it as the DOC in-house clinic.

It should be known and of great interest to this court that currently persons now diagnosed with sleep apnea through a polysomnogram here at the DOC are, since the filing of this lawsuit, given a second polysomnogram while under CPAP therapy to both find and set the proper pressures before they receive their machines. The fact that the Doc has changed its procedure and implemented a second polysomnogram, which I went without for three years, supports evidence that this is the established standard of care and the appropriate next step for successful CPAP therapy. It is my contention that Dr. Motola's notation was meant for this follow up and allege that he is covering for the department of corrections and if this is not the case, then he has denied me from the established standard of care of a second polysomnogram to titrate my machine. However, this Court has ignored the treatises I have submitted in Exhibit "M" and further denied my requests for an expert to testify on my behalf, which has now somehow been used against me as precluding me from relief. The true meaning behind the notation is not for the court to decide and are functions of a jury.

> "This is substance in the sense that it limns differing versions of the truth which a fact finder must resolve at an ensuing trial"
> **MACK V. GREAT ATL. & PAC. TEA CO., 871 F2d 179, 181 (1st cir.)**

The plaintiff has provided evidence that the established standard of care, after diagnosis, is to perform a second polysomnogram while under CPAP THERAPY to titrate the machine to properly relieve the apnea and see if CPAP is working. Exhibit "M" which accompanied my response to summary judgment contained a publication form the Journal of California Dental Association, Quotes from this publication can be found on page 6 of my Objection to Defendant Motola's Motion for Summary Judgment which state; "when a patient is suffering from sleep apnea and is being treated with an appliance a follow up polysomnogram should be done..." and "most of them need to be titrated". It further states in Exhibit "M" at page 61 and in my response at page 11 that "If a

practitioner suspects that a patient may be experiencing apnea episodes that he or she should refer that patient to a physician immediately either a sleep specialist, otolaryngologist, or internist, who can make sure that the patient receives a complete medical work up and sleep test.

In conclusion, the dispute of what the "notation reads" is a triable issue in reference to what it actually means and the magistrate is making decisions that should be left to a jury. If the notation is a reference to follow up, then the DOC is liable, if it is not a reference to follow up in the form of a second polysomnogram then Dr. Motola has clearly disregarded the established standard of care and deprived the plaintiff from allowing his machine to be properly titrated for a period of three years and exposing the plaintiff to significant apnea. Dr. Motola as a physician should possess the requisite knowledge to understand that simply plopping a CPAP MACHINE in my lap without follow up was not the established standard of care.

The mere fact that Dr. Motola is asking this Court to clearly construe his hand written notation "out of context", as any laymen would not interpret this notation to read "to be seen in the clinic" speaks volumes. Furthermore a trial courts function on a motion for summary judgment is to determine whether if any facts give rise to a triable issue, not to pass upon or determine the issue itself, as was done here on page 7 & 8 of the REPORT AND RECOMMENDATION.

Lastly, is the plaintiff provided evidence found in Exhibit "D" that clearly evidences that sleep labs such as Lifespan Hospital are commonly refered to as Sleep Clinics and also expressed in my objection to defendants Motola's motion for summary judgment at page 1 & 2, that in my past five years of incarceration or upon the vast records, notes, reports, and diagnosis's I have never heard, saw in print, writing or otherwise that the Medium One hospital/infirmary was ever referred to as a "in-house clinic" and is complete horsefeathers, nor has the defendant introduced any such evidence in the course of this litigation.

With a visual inspection of the notation it can be assessed it does not say "to be seen in the clinic", contrary to the defendants sworn affidavit. However, the magisrate has completely over looked this matter and based his decision by giving greater

weight to physicians/defendants affidavits and making credibility determinations. The fact that Dr. Motola asserts his hand writen notation indicated that he was referring to the DOC infirmary as an in-house clinic carries no weight at all. The Magistrate on pages 7 & 8 believes because I had an appointment with Dr. Allen on September 27 2001 to discuss my diagnosis, that this has some kind of forcing effect that the notation actually was to alert the DOC medical staff to schedule the plaintiff for an appointment in the DOC'S supposed medical in-house clinic. It seems the mere fact that I had an appointment on September 27 2001, somehow makes Dr. Motola's allegations or indications ring true.

Page 2, Para. 4 - **"Plaintiff however, never directly informed Dr. Motola that he needed replacement parts for his CPAP Machine, nor did he bring any additional medical issues relating his sleep apnea to Dr. Motola's attention"**

The Magistrate on pages 6 & 7 of his report and recommendation, starting on page 6, Para. 4 states: **"Plaintiff attempts to connect Dr. Motola to the alleged failure to provide such parts by identifying an appointment he had at the DOC'S medical clinic, (NOTE:** Magistrate himself is now regarding the Medium One Hospital/infirmary as CLINIC), **regarding back pain on April 24 2003. In the course of this appointment, plaintiff claims he spoke to a DOC Nurse about the status of his replacement parts for his CPAP machine. According to the plaintiff during his exchange with the nurse, Dr Motola was present and presumably overheard the conversation. While this may be true, plaintiff never spoke directly to Dr. Motola regarding regarding his alleged need for replacement parts, nor did the plaintiff relay to Dr. Motola any indication that his health was in jeopardy or his symptoms worsened due to the lack of timely replaced parts. The undisputed facts demonstrate the plaintiff and defendant Motola had no direct communication regarding plaintiffs request for replacement parts.**

OBJECTION - First of all, the defendant never denied the conversation set forth in the Order of Events in Exhibit "E" in the above matter. The defendant Motola was a part of this conversation, the Magistrate has viewed this conversation as if the "Berlin Wall" had separated Dr. Motola from this conversation, when all three

of us stood not five feet apart in Dr. Motola's office. Furthermore, directness is not a prerequisite to fulfill the requisite knowledge standard of cases such as ESTELLE V. GAMBLE, 429 US 97, 106. Dr. Motola understood that I had a serious medical need that was treated through CPAP therapy that he basically diagnosed, thus he had the requisite knowledge that worn parts or a need for replacement parts would have a substantial effect on my treatment, thus a culpable state of mind.

Page 3, Para. 1 - **"Plaintiff also alleges claims .... and a state law claim of medical malpractice."**

Page 10, Para 1 - **"here plaintiff has failed to identify an expert to testify on his behalf and failed to otherwise demonstrate that he possesses any evidence demonstrating causation to any injury."**

OBJECTION- The plaintiff on December 16 2004 was denied appointment of an expert to testify on my behalf. The Magistrates ORDER stated; "the plaintiffs complaint rests chiefly upon inadequate medical care under the Eighth Amendment...." and "An analysis of this issue in this case does not involve probing, complex questions concerning medical diagnoses and judgment"

December 18 2004, I filed an objection, (attached), in my argument that without an expert I would be unable to prove that the defendants deviated from the established standard of care and stated this case does involve and may rest on probing and complex questions that could only be answered by a specialist in sleep apnea and pulmonary matters to answer such complex questions concerning diagnosis and treatment. Now the very same reasons that I sought expert testimony of which this court obviously disagreed with, this same court is using to prevent my claim of deliberate indifference and malpractice from going forward for these same reasons. The plaintiffs whole case focusses on medical decisions, diagnosis and judgment as to appropriate follow up that is consistent with the established standard of care, however because the magistrate did not believe this to be true, denied my appointment of an expert. Now he has used these same principles that he felt were not apparent, or did not exist to show a need for an expert to be appointed, now suddenly do exist and are apparent grounds to preclude relief. For my claims to fail based on my poverty or my inability to

to financially afford appointment of an expert to succeed on my claims would be judicaially unfair.

## SUMMARY JUDGMENT

OBJECTION- "A summary judgment has been held properly granted only where no material factual issue remains in the case, that is, where the facts are clear and undisputed or so certain as not to be subject to dispute, leaving the sole duty of the court the determination of the correct legal principles applicable thereto" MORLAND V. DURLAND TRUST CO., 127 COLO 5, 36 ALR2nd 874. "where it is not perfectly plain that the action is within the scope o summary judgment statute or that there is no real issue to be tried a motion for summary judgment is improper and should be denied" FISHER V. SUN UNDERWRITTERS INS CO., 55 R.I. 175, 179 A 702. "That when circumstances revealed by the pleadings and depositions are such that evidence thereof was submitted to a jury, the court would have no alternative but to direct a verdict" RI RECREATION CENTER INC V. AETNA CASUALTY AND SURITY CO., 177 F2d 603. "credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or a directed verdict" WILSON V. WILLIAMS, 997 F2d 350. quoting ANDERSON V. LIBERTY LOBBY INC, 477 US 255. ANDERSON SUPRA further states that "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor"
In cases such as WILSON, because the district court impermissably made credibility determinations by giving greater weight to the physicians affidavits than those of Bivens and Wilson, its granting of summary judgment was improper.

Case law states the province of the Court on such a motion is not to try issues of fact, but rather to determine such an issue exists. A trial courts function upon a motion for summary judgment is to determine if any facts give rise to a triable issue or defense, not to pass or determine the issue itself.

The fact that this report and recommendation has agreed that there is a dispute over the meaning to Dr. Motola's notation

and if the meaning was interpreted or given equal weight as to the plaintiffs argument, the fact presented that the very next step after diagnosis of sleep apnea after a polysomnogram is to be tested while under CPAP therapy to adjust pressures of the CPAP to find the proper pressure where the apnea is relieved would suggest that this would be Dr. Motola's next step of the established standard of care in properly using CPAP to relieve apnea. Thus, not only would this be the next practical step, it supports the meaning of the notation as to why Dr. Motola would ask that I be seen in the sleep clinic at Lifespan Hospital. In fact, by supplying this appointment some three years after the fact, evidences it was necessary and furthermore the fact that the DOC now follows this as standard procedure for new patients since the filing of this suit, evidences it is the etablished standard of care. These facts would give rise to a triable issue. Even if Dr. Motola's notation is as he says, though he asks this court to visually read the notation out of context as it was presented, and even though he asks this court to not only read it out of context but to also construe its meaning out of context, he has deviated from the established standard of care as related to medical publishings presented in the plaintiffs response, which would have been supported had expert testimony had been provided. The Magistrate has made credibility determinations and given greater weight to the defendant or the moving party. The Magistrate has erred by suggesting that <u>direct</u> contact was not made with Dr. Motola in the ordering of parts, or that it is a prerequisite to sustain the requisite knowledge standard of cases such as ESTELLE SUPRA. The Magsitrate has improperly drawn inferences from facts in the granting of summary judgment. The Magistrate seems to be taking the word of the defendant that he is referring to to the DOC hospital/infirmary, to be interpreted as a CLINIC, despite the defendants have not provided a shread of evidence in any form that the DOC hospital/infirmary has ever been referred as such. The Magistrate has drawn the conclusion that Dr. Motola's notation could not have been a recommendation for a second polysomngram to titrate, or adjust the pressures of my machine. The facts here are not clear and undisputed as stated in MOORLAND SUPRA.

If the facts of the true meaning of the notation by Dr. Motola and the evidence was submitted to a court, they would have no alternative but to direct a verdict as stated in RI RECREATION CENTER SUPRA. In the case at hand the magistrate has admitted that the fact of the notation are in dispute as to what the notation reads and to what the notation means are both in dispute and how it is written has a direct baring on how it should be interpreted. "to be seen in that clinic", would not be referring to the DOC'S supposed in-house clinic, "to be seen in this clinic" when written on the Lifespan Hospital form, would not be referring to the DOC'S supposed in-house clinic. However, "to be seen in the clinic" might be construed the way the defendant asks this court to believe it was used, however that is not what it says. Thus, despite the facts are disputed and give rise to a triable issue and claim, the Magistrate has passed upon or determined the issue itself.

Lastly, the physical evidence of the notation itself can not be construed to be read as the defendant claims, and this court with the most liberal reading could not say that the notation could be remotely construed or to be read as "the clinic".

## PLAINTIFFS EIGHTH AND FOURTEEN THE AMENDMENT CLAIMS

Page 4, Para. 3 - **Plaintiff claims that Dr. Motola failed to provide adequate medical care, including Dr. Motola's alleged failure to provide in a timely fashion replacement parts for plaintiff CPAP machine.**

Page 5, Para. 2 - **In order to state a cognizable claim a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs...... Officials must intentionally delay or completely deny access to medical care.**

OBJECTION- Upon my appointment with Dr. MOtola on April 24 2003, after discussing my problem with back pain, Dr. Motola asked if I had any further medical concerns ? This is when I brought up the subject of my replacement parts to Nurse Melvin White. The question was directed to both defendants and was a direct response to Dr. Motola's question. (thus the Magistrate erred

in inferring that the plaintiff never spoke directly to Dr. Motola regarding replacement parts). The fact that I was looking at Melvin white when speaking was only due to the fact that he had been delinquently handling the issue and was present during my appointment. The question would have been asked even if Melvin White was not present. The fact that it was a direct response to Dr. Motola's question shows a directness that the Magistrate has expressed was never fulfilled. Lastly, this evidence, which was never denied by any of the defendants, supports the evidence that Melvin White in his sworn affidavit in which he states he can not remember when my first request for replacement parts was, but is trying to allege that it was March 2 2004, through the use of the sworn affidavit of Nurse Vinny Jacavone to support such an allegation, is complete hogwash.

Furthermore Dr. Motola was aware that any interference with my CPAP therapy through worn parts would have no choice but to compromise my CPAP therapy itself. As a physician he should clearly understand that any parts that were worn or leaked would result in a pressure change and it is obvious in Exhibit "H" served with my response to summary judgment, that exact pressure settings and maintaining such pressures is the only way CPAP can relieve apnea. The fact that follow up was never provided to find the corresponding pressure setting to relieve my apnea and that my machine lacked this setting for a period of three years of its use, amounts to a complete denial of treatment. This deviation form the established standard of care resulted in a denial of proper medical care which was proven by fulfilling the objective prong in the courts report and recommendation, as having a severe and dangerous condition creating a substantial risk of harm. Only until I forced the DOC to comply to adjust my machine through a second polysomnogram was my machine ever found to be a successful treatment. Exhibit "H", as stated above, evidences that until this test was done and the proper pressure was established through my second polysomnogram and my machine was set to the proper pressure in approximately August 2004 by the Denmark Company, sufficient apnea still existed.

b. SUBJECTIVE PRONG

Page 6, Para. 3 - **Plaintiff must set forth evidence that Dr. Motola had a culpable state of mind or reckless disregard rising to the level of criminal recklessness to plaintiffs serious medical needs.**

Page 7, Para. 1 - **Plaintiff never spoke directly to Dr. Motola regarding his need for replacement parts, not did the plaintiff relay to Dr. Motola any indication that his health was in jeopardy or his symptoms worsened due to lack of timely replacement parts.**

OBJECTION - The plaintiff has set forth evidence that Dr. Motola had a culpable state of mind, as the risk would be obvious to any physician that worn parts would compromise my CPAP therapy. Since the success of CPAP is solely based on the exact pressure being distributed to the patient, even a laymen would understand worn parts and leaks would effect the air pressure. Circumstantial evidence and undisputed facts such as my appointment April 24 2003 for back pain in which I spoke to both Dr. Motola and Melvin White regarding failed replacement parts combined with the fact that Dr. Motola never provided a second polysomnogram to follow through with medical care through CPAP THERAPY to assure its success. These facts suggest that Dr. Motola did have the requisite knowledge to have a culpable state of mind and deviated from the established standard of care in his failure to take action. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a fact finder may conclude that a prison official knew of a substantial risk from the very fact it was obvious". FARMER V. BRENNAN, 511 US at 842.

Here the plaintiff has provided circumstantial evidence and has raised the fact that as a physician, and my acting physician, who was clearly aware that CPAP therapy was prescribed treatment treating a serious medical condition, had the requisite knowledge as a trained physician, that without proper calibration its success would be compromised and without replacement parts its success would be further compromised, which should be obvious

to any trained physician.

However, the Magistrate has assumed the role of factfinder as to what is and should be obvious to a physician. He has asserted that I as a layman must tell a trained physician directly that I was in jeopardy and my condition worsened, and that this is an absolute prerequisite for a trained physician to have the requisite knowledge that a substantial risk exists.

The plaintiff disagrees and further refers to FARMER SUPRA, "an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that a harm would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."

Here the Magistrate has denied my deliberate indifference claim for the fact that I did not show that Dr. Motola failed to act, believing that a harm would befall me, which is clear error in relation to FARMER SUPRA. The plaintiff need only show that the defendant possessed the requisite knowledge of a substantial risk of serious harm. The fact that Dr. Motola is a trained physician and actively participated in the diagnosis of my serious medical condition, are innferences from circumstantial evidence that he possessed the requisite knowledge.

Thus the fact that the Magistrate states "no evidence has been set forth by the plaintiff demonstrating that the plaintiffs condition was worsening or that the plaintiff had an increase of symptoms." is of little meaning in association with the language of FARMER, and does not mean that Dr. Motola did not possess the requisite knowledge as a trained physician that a substantial risk of serious harm existed.

In conclusion the plaintiff asserts that the Subjective prong of deliberate indifference has been met and the Magistrate has erred by inferring that I must have informed Dr. Motola or put him on notice of an impending risk. If I told my auto mechanic that my brakes were worn and needed to be replaced, I would not need to advise him of the impending doom associated with worn brakes for him to have the requisite knowledge that a substantial risk of harm exists. It is enough that the defendant

through his medical education and background, availability to access patients records, and his involvement with diagnosis and treatment, would clearly possess the requisite knowledge that a risk of serious harm existed.

**C. PLAINTIFF STATE LAW MEDICAL MALPRACTICE CLAIM**

OBJECTION - See Page 5 of this documentation in reference to "Page 3, Para. 1 - plaintiff also alleges claims..... and a state law claim of Medical Malpractice."

Respectfully,

STEPHEN REISE PRO SE
P.O. BOX 8274
CRANSTON, RI, 02920

**CERTIFICATION**
**28 USCA 1746**

I hereby swear that a true copy of this documentation was mailed in the interdepartmental mailbox, postage pre-paid on this 14 day of June 2005, and mailed to the persons below:

JAY ELIAS ESQ.
1600 FINANCIAL PLAZA
PROVIDENCE RI, 02903

MICHAEL FIELD
ATTORNEY GENERALS OFFICE
150 SOUTH MAIN STREET
PROVIDENCE, RI, 02903

ALLAN TATE ESQ
321 South Main st.
PROVIDENCE, RI, 02903

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

STEPHEN REISE PRO SE

VS. CASE NO. 04-0158(ML)

ASHBEL T. WALL et. al.

OBJECTION TO MAGISTRATE HAGOPIAN'S DECEMBER 16 2004'S
ORDER OF A DENIAL TO APPOINT EXPERT TESTIMONY FOR THE PLAINTIFF

Now comes the plaintiff, Stephen Reise, who is not in line with Magistrate Hagopian's decision and feels that this Court erred in its decision.

This Court points specifically to the plaintiffs "claim that he was wrongly denied parts for his CPAP machine, a machine necessary in order for the plaintiff to get adequate sleep. In this case, plaintiff must demonstrate deliberate indifference to his serious medical needs".

The plaintiff claims he suffered approximately a fourteen, (14) month delay in the ordering of such parts and that delay amounted to deliberate indifference. The plaintiff has further supplied medical documentation of associated illnesses that result from untreated sleep apnea in the PRODUCTION OF DOCUMENTS PGS. 131 - 135.
In MORALES FELICIANO V. ROSSELLO CONZALEZ, 13 F.SUPP2d. at page 208, 1st Circuit, 1998, states that "Serious medical needs also include conditions that threaten to cause health problems in the future."
FRANKLIN V. DISTRICT OF COLUMBIA, 960 FSUPP 394, 1997, this case at page 428 states: "Actual harm is not required: the question is whether prison officials, acting with deliberate indifference, exposed a prisoner to a substantial risk of serious damage to his future health."
In CHANCE V. ARMSTRONG 143 F3d 698 at page 702, states: Other circuits have held a serious medical condition existed where " the failure to treat a prisoners condition could result in further significant injury or the unnecessary and wanton infliction of pain'"

The plaintiff has claimed that this fourteen month delay, exposed me to a substantial risk of serious damage to my future health and "deliberate indifference to my serious medical needs",

which this Court has found to be the main reason for it's denial of appointing expert testimony, yet it clearly demonstrates that this deliberate indifference to serious medical needs includes conditions that threaten to cause health problems in the future as stated in FELICIANO in the 1st circuit.

Without Expert testimony to concur that a substantial risk of harm indeed existed and a threat to future health problems, deliberate indifference can not be proven. The fact is that without expert Testimony I am unable to prove that the Department of Corrections didn't follow exceptable standards of care in treatment through CPAP THERAPY, or the harm that has come about, or future harm that I was exposed to by ignoring follow up back in 2001. Although Dr. Richard Millman claims he did not order follow up in his deposition, the fact remains that someone with the authority to do so and having access to my medical records did make a hand written note on my diagnosis to be seen in Dr. Millmans sleep clinic. Furthermore, Dr. Millmanns orders of June 11 2004 were not followed, I was not provided with a full face mask for my sleep study and I was not fitted by the homecare company DENMARK. An Expert testimony will reveal that a mask with an improper fit provides little or no relief through CPAP THERAPY. Though actual harm is not required for purposes of an Eighth Amendment violation, in order to prove officials acted with deliberate indifference, I must present the issue that a medical substantial risk of damage to my future health existed, and the defendants exposed me to that risk or drew such an inference. Thus, this case does involve and may rest on probing and complex questions that could only be answered by a specialist in Sleep Apnea and pulmonary matters to answer complex questions concerning diagnosis and judgment.

Wherefore, in the interest of justice and judicial fairness I pray that this court recognize that the plaintiffs complaint does not just rest chiefly upon inadequate medical care, but is two fold in nature, and also rests on the associated illnesses such as Ischemic heart disease, right heart failure and degenrative cardiovascular disease, ect, that I have been exposed to by improperly operating equipment due to the failure to order parts and follow up. Whereas, I pray this Court reconsider its decision and grant the appointment of expert testimony.

Though my claim of a denial, delay and interference with the ordering of parts is a claim that I allege, it is the further medical harm that I was exposed to during this denial, delay and interference of ordering parts that is in jeopardy of failing without expert testimony. My claims of follow up also require expert testimony to compare the standard of care of which I received. The only claim that may not provide expert medical testimony is the DOC's blatent disregard for Dr. Millman's orders of June 11 2004 and discrimination claims that have been entered by supplemental complaint.

Respectfully,

STEPHEN REISE PRO SE
P.O. BOX 8274
CRANSTON, RI, 02920

## CERTIFICATION

I hereby swear that a true copy of this documentation was placed in the interdepartmental mailbox, postage pre-paid on this 28 day of December 2004, and sent to the persons below:

JAY ELIAS ESQ.
1600 FINANCIAL PLAZA
PROV. RI, 02903

MICHAEL FIELD/THOMAS PALOMBO
ATTORNEY GENERALS OFFICE
150 SOUTH MAIN ST.
Providence RI, 02903

ALAN TATE/REBECCA WARR ESQ.
321 SOUTH MAIN ST.
PROVIDENCE, RI, 02903

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**STEPHEN REISE,** *pro se*

v. C.A. No. 04-158 ML

**A.T. WALL,** Director of the
Rhode Island Department of Corrections, et al.

**ORDER**

This matter is before the Court on two motions. The Court shall address each motion separately.

1. On December 2, 2004, plaintiff Stephen Reise, an inmate incarcerated at the Adult Correctional Institutions, filed with this Court a motion for attorney's fees and for an appointment of an expert under Fed.R.Evid. 706. Defendants have objected.

Upon consideration of the motion, and the objection thereto, plaintiff's motion for attorney's fees is **DENIED**. No basis exists to award the plaintiff attorney's fees.

To the extent that the plaintiff seeks that appointment of an expert, said motion is **DENIED.** Plaintiff's complaint rests chiefly upon inadequate medical care under the Eighth Amendment. Specifically, plaintiff claims that he was wrongly denied parts for his CPAP machine, a machine necessary in order for the plaintiff to get adequate sleep. In this case, plaintiff must demonstrate "deliberate indifference" to his serious medical needs. An analysis of this issue in this case does not involve probing, complex questions concerning medical diagnosis and judgment. See e.g. Ledford v. Sullivan, 105 F.3d 354, 359-360 (7th Cir. 1997).

2. On December 6, 2004, plaintiff Stephen Reise filed a "motion for this court to review retaliatory conduct of the Department of Corrections in violation of R.I.G.L. 11-32-3," a state criminal statute. Defendants have objected. Upon consideration of the motion, and of the objection thereto, said motion is **DENIED**.

**IT IS SO ORDERED.**

Jacob Hagopian
United States Magistrate Judge
December 16 , 2004

208