UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND court

STEPHEN REISE PRO SE

V. CASE NO.04-0158(ML)

A.T. WALL, et. al.

## OBJECTION TO THE REPORT AND RECOMMENDATION OF THE GRANTING OF SUMMARY JUDGMENT TO DEFENDANT SCOTT ALLEN

The plaintiff contests the following of the "UNDISPUTED FACTS" section of the Report and Recommendation as defined in **BOLD TYPE:**

Page 2, Para 4 - **Plaintiff, however, did not seek medical treatment from Dr. Allen in the letter.**

Page 2, Para 5 - continuing on Page 3, Para. 1 - **By letter of March 2 2004 Dr. Allen informed plaintiff that since the letter did not seem medical in nature, he referred the matter to the Associate Director of Health Care Services, Joseph Marocco. In this letter, Dr. Allen states that should plaintiff "feel his medical concerns are not being reasonably addressed" to contact him again. Between February 26 2004 and the filing of the instant suit, plaintiff did not contact Dr. Allen.**

Objection- Exhibit "I" submitted with my opposition to defendant Allen's Motion for Summary Judgment is a copy of the February 26 2004 letter. The Magistrate has decided the issues of this letter as to its not being medical in nature and that the request for parts is not a request for medical treatment. Anyone who read this letter would have a difficult time being convinced that this letter is not medical in nature and that I expressed concerns with the substantial risks associated with my disability. They would further have a difficult time believing that this was not a final request for parts that were needed for CPAP treatment to avoid suffering "A trial courts function upon a Motion for summary judgment is to determine whether any facts give rise to a triable issue, not to pass upon or determine the issue itself" MANCHESTER MEMORIAL HOSPITAL V. WHITNEY, 6 CONN CIR 212.

"it has been held that a court, upon consideration of a Motion for Summary Judgment, does not evaluate evidence as a trier of fact would do, but merely determines the legal effect of the facts" ALABAMA G.S. R. CO. V. LOUISVILLE AND N.R. CO., 224 F2d 4

There is a clear dispute that my request for replacement parts in this letter of February 26 2004 was not a request for medical treatment. The fact that I described the condition of the parts of which I sought from Dr. Allen, would reference that Dr. Allen as a physician would have the requisite knowledge to know that my CPAP therapy or treatment would be compromised by the described condition of these parts. Furthermore, this letter could not be construed as not being medical in nature. The fact that I described that the Mask leaked, the headstrap was stretched out and the gel spacer had disintegrated, may mean nothing to a layman, but would be obvious to a physician that CPAP would be compromised. The plaintiff clearly stated in his letter "this is my final request to resolve this matter before taking legal action....." despite this quote, nothing was done until the filing of suit two months later. This letter clearly stated I felt my medical concerns were already not being reasonably addressed, "For a year now and endless requests, I have asked that I have replacement parts for my machine".

Thus the Magistrate's conclusion that after Dr. Allens March 2 2004 letter regarding that I should have contacted him if I felt my medical concerns were not being reasonably addressed, is completely unreasonable and lacks any standing when I specifically stated this was a "final request to resolve this matter before taking legal action", in my letter. Furthermore the Magistrate completely overlooks the fact that nothing was done by Joseph Marocco or anyone in an effort to contact me or order parts until after this lawsuit was filed on May 3 2004. Only then was any contact made in regards to ordering parts. Thus despite all that was stated in my letter of February 26 2004, the Magistrate feels I should have made further contact with Dr. Allen, despite I expressed I felt my medical concerns were not being reasonably addressed the first time, despite I expressed my concern for the nature of my medical condition, despite I advised him of failed parts, despite I stated this was a final request before taking legal

action and giving Dr. Allen an opportunity to do the right thing. The Magistrate believes I should have tried again despite my letter was basically ignored in full and was met with an attitude of deliberate indifference and utter disregard by his response or lack there of.

The plaintiff contests the following subject matter under the heading of "b. SUBJECTIVE PRONG" section of the Report and Recommendation as defined in **Bold type face;**

Page 8, Para 2 - **Dr. Allen wrote to the plaintiff on March 2 2004 informing him that since he was only requesting replacement parts and not medical treatment, he was referring the matter to Joseph Marocco, Associate Director of Health Services. Dr. Allen directed the plaintiff to contact him again if he felt his medical needs were not properly being addressed. Plaintiff did not contact Dr. Allen.**

Objection- Thoroughly discussed in the previous pages of this pleading.

Page 8, Para 3 - **Although Dr. Allen was aware of plaintiff's sleep apnea, plaintiff has not set forth evidence to demonstrate that Dr. Allen had any reason to believe that plaintiffs condition was not under control or that Dr. Allen knew of any increase in plaintiffs symptoms due to the alleged delay in the replacement parts, Indeed , no where does the plaintiff indicate that his CPAP MACHINE was not properly operating resulting in an increase in symptoms.**

Objection- The Magistrate is basing his determination that Dr. Allen did not have any reason to believe that the plaintiffs condition was not under control or that Dr. Allen was unaware of any increase of symptoms based on his interpretation as a layman, and not as a physician. Dr. Allen as a physician has the requisite knowledge to know that worn parts would directly effect my pressures distributed by my machine, thus effecting my treatment. The Magistrate is drawing inferences as to what would not be obvious to

layman, rather than what would be obvious to a physician, as the standard of evidence differ greatly. In furtherance, my letter of February 26 2004 expressly states that my "Mask leaks, the headstrap is stretched out, the forehead spacer has disintegrated .....", which may not indicate to a layman that my machine is not working properly any more than I expect a layman to know what a "forehead spacer" is. However, to a physician or one with the slightest knowledge of how CPAP therapy works and its relationship to exact pressure to relieve apnea events, one would have the requisite knowledge that the mask, headstrap and forehead spacer are parts of the machine and the failure of these parts effect the operation of the machine which would naturally result in compromising my treatment and return of symptoms. The Magistrate is not qualified to draw inferences as to what would or should be obvious to a physician, nor should he base his decision on a laymans perception of understanding to satisfy the reasonable knowledge standard of a physician. What may not be obvious to a layman in a medical request or diagnosis would be obvious to a trained physician as Dr. Allen.

Page 8, Para 4 - **Plaintiff also attempts to establish the subjective prong on Dr. Allen by pointing to a notation made on Dr. Millman's written diagnosis.**

Objection - This Court has drawn the inference that because I had a consultation with Dr. Allen in reference to treatment of my sleep apnea on September 27 2001, which would have taken place with or without Dr. Motola's handwritten notation, that somehow Dr. Motola's allegation that this hand written notation, when construed out of context can be conveniently used to fit this September 27 2001 appointment as its intended meaning is complete hogwash.

The Magistrate has drawn inferences and given more weight to the defendants alleged facts and credibility while completely overlooking the facts below; (Note: All Exhibits refer to previously filed Exhibits, filed with Objection)

1. when reading Dr. Motola's handwritten notation it unequivocally nor remotely could be interpreted to be read as "to be seen in

the clinic". Here the Magistrate has clearly made a credibility determination as to how the notation should be read, as opposed to what it actually does read and how it should be interpretated.

2. The fact that I have provided evidence that appliances such as CPAP require a second polysomnogram while under CPAP therapy to find the required pressure to relieve my apnea events for CPAP to work successfully. (See Exhibit "F" at page 66 of exhibits submitted with objection)

3. The fact that I was provided this second polysomnogram some three years later in which the report itself reflects was necessary to find the correct pressure to relieve my apnea was also overlooked. (Exhibit "M")

4. The mere fact that the second polysomnogram was provided supports evidence it was necessary. The fact that Dr. Millman had the Denmark Company set my machine to the corresponding pressure evidences its necissity. (Exhibit "A")

5. The fact that Dr. Millman confirmed in his deposition that the that the second polysomnogram was due to his fear the pressures were never adjusted, evidences it should have been done.

6. The fact that the DOC since the filing of this lawsuit, upon diagnosing a patient with sleep apnea, now provide a second polysomnogram while under CPAP therapy to both find and set the proper pressures before the patient receives his CPAP machine, evidences that it is the standard care.

7. The fact that the DOC has changed its procedure, after I forced them to provide a second plysomngram some three years after the issuing of my machine, accompanied by the fact that they now implement a second polysomnogram as the next appropriate step of treatment, supports not only evidence that it is the established standard of care, but that it was essential for successful relief of apnea through CPAP therapy.

the undisputed facts seem to indicate that without a second polysomnogram to obtain proper pressures to relieve my apnea that my CPAP was unsuccessful. the evidence presented in treatises, combined with the newly implemented procedures of the DOC in treating new patients for apnea, reflect that the next appropriate step is to provide this second test to titrate the pressures of each

machine according to the severity and each individuals needs and without following such procedures CPAP can not be an efective means of treatment.

However, this court claims that I must have stated that my condition worsened or I suffered and increase of symptoms, which becomes very difficult when the fact of the matter is that my apnea would have to have been successfully treated to begin with, for my condition to worsen. It should also be noted that the defendant Motola never made reference that it was he who made the handwritten notation, nor deny it was not meant to provide a second polysomnogram until after the closure of discovery, preventing the plaintiff from securing any discovery related to these matters.

The plaintiff contests the following of the "C. State Law Medical Malpractice Claims" section of the Report and Recommendation as defined in **Bold face type;**

Page 10, Para 4 thru Page 11, Para. 1 - **Here, plaintiff has failed to identify an expert to testify on his behalf and failed to otherwise demonstrate that he possesses any evidence of the appropriate standard of care, any evidence indicating a deviation from the standard of care, or any evidence demonstrating causation to any injury.**

Objection - The plaintiff on December 16 2004 was denied appointment of an expert to testify on my behalf. The Magistrates order stated; "the plaintiffs complaint rests chiefly upon inadequate medical care under the Eighth Amendment....." and "An analysis of this issue in this case does not involve probing, complex questions concerning diagnoses and judgment". However, this is exactly what my complaint rests on! The Magistrate uses the word "Chiefly" as if one complaint carries more weight than another or as if one is more important than another. He then goes on to say that my case does not involve any complex questions concerning diagnosis and judgment. If expert testimony had been appointed questions involving judgment as to the appropriate standard of care that was received would have been found deficient. The question of injury associated with such judgment and the deviations from the established standard of care would have been shown.

The very reasons the magistrate used to deny my request for appointment of an expert and said did not exist, now suddenly do exist and because I have not provided an expert to support the very reasons which brought about a denial of an expert, the magistrate has subjected my complaint to fail through his granting of summary judgment to the defendants.

December 18 2004, I filed an objection, in my argument I stated that without an expert I would be unable to prove that the defendants deviated from the established standard of care and stated that this case does involve and may rest on probing and complex questions that could only be answered by a specialist in sleep apnea and pulmonary matters. The plaintiffs whole case is based on judgment decisions and deviations from the standard of care which can not be met without identifying what the standard of care is ? Injuries due to the overworking of the heart to replenish the lack of oxygen as indicated in my diagnosis could only be established by an expert. The question of what benefit I received from a machine that was never adjusted to relieve my apnea has gone unanswered. These questions and a host of others were precluded from being asked of answered due to this Courts decision to deny the plaintiff an appointment of an expert, thus proving the Court erred in its denial of appointment of an expert on the grounds that no "complex questions concerning medical diagnosis and judgment" was not only incorrect, but should not be allowed to be used to circumvent or negate my claim of deliberate indifference or Medical Malpractice.

The Magistrate has further overlooked the utter disregard for the orders of Dr. Millman as stated on page two (2) and three (3) of my "Opposition to Defendant Scott Allen's Motion for Summary Judgment". He refuses to consider the denial of my second polysomnogram as being a deviation from the established standard of care, despite supplied treatises. The Magistrate completly overlooks the fact that Dr. Millmans orders of having the replacement parts, (headgear), for my 7/28/04 visit for my second polysomnogram were blatantly disregarded. Not only does the Magistrate overlook the fact that it was not provided as ordered, he overlooks that it was refused to be purchased as evidenced in exhibit "B" on 8/22/04. Furthermore, he refuses to acknowledge that further orders were violated by not being fit for a new

mask by the home health care company known as "Denmarks", which was specifically ordered in Exhibit "A".

Lastly the Magistrate makes no reference to the ongoing situation of which my life is currently placed in danger and significant harm and my inability to obtain adequate rest as specifically referenced in Exhibit "E". There can be no mistake that the above and previous matters of failing to follow direct orders and the denial and delay to follow such orders demonstrates a causation to injury to the plaintiff and evidences Malpractice and deliberate indifference.

**LEGAL STANDARD**

"Summary Judgment has been held properly granted only where no material factual issue remains in the case, that is where the facts are clear and undisputed, leaving the sole duty of the court the determination of the correct legal principles applicable thereto" MORLAND V. DURLAND TRUST CO., 127 COLO 5, 36 ALR2nd 874

"where it is not perfictly plain that the action is within the scope of summary judgment statute or there is no real issue to be tried a motion for summary judgment is improper and should be denied" FISHER V. SUN UNDERWRITTERS INS. CO., 179 A 702.

Here the issues of Dr. Allens response to my February 26, 2004 letter of being a blatent disregard is in question. It is further disputed that the request for replacement parts necessary to be successfully treated through CPAP therapy, was not a request for medical treatment. It is further disputed that any further contact with Dr. Allen would have been reasonably beneficial after my letter of February 26 2004. It is further disputed that Dr. Allen as a physician would not have had the requisite knowledge that with worn parts and the delay of ordering such parts the plaintiffs symptoms would worsen or that my machine was not working properly. There's an obvious dispute in reference to the natations interpretation and meaning.

"The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts the court may intuit the correct cause of action even if imperfectly pled" AHMED V. ROSENBLATT, 118 F3d 886, 890.