**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

STEPHEN REISE
Plaintiff

v. U.S.D.C. No. 04-158ML

ASHBEL T. WALL, JOSEPH MAROCCO
SCOTT ALLEN, BARUH MATOLA, MEL
WHITE, sued in their individual and official
capacities
Defendants

**DEFENDANTS' A.T. WALL, JOSEPH MAROCCO, AND MELVIN WHITE'S MOTION OBJECTING TO PLAINTIFF'S "OBJECTION TO THE REPORT AND RECOMMENDATION OF THE GRANTING OF SUMMARY JUDGMENT TO DEFENDANTS WALL, MAROCCO AND WHITE"**

Now comes Defendants A.T. Wall, Joseph Marocco, and Melvin White and objects to Plaintiff's "Objection to the Report and Recommendation of the Granting of Summary Judgment to Defendants Wall, Marocco and White." A memorandum of law in support of said objection is attached.

Respectfully Submitted,
Defendants, A.T. Wall, Joseph Marocco
and Melvin White

By their attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

Michael W. Field #5809
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 x 2380
Fax: (401) 222-2995

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

STEPHEN REISE
Plaintiff

v. U.S.D.C. No. 04-158ML

ASHBEL T. WALL, JOSEPH MAROCCO SCOTT ALLEN, BARUH MATOLA, MEL WHITE, sued in their individual and official capacities
Defendants

**DEFENDANTS' A.T. WALL, JOSEPH MAROCCO, AND MELVIN WHITE'S MEMORANDUM OF LAW IN SUPPORT OF THEIR OBJECTION TO PLAINTIFF'S "OBJECTION TO THE REPORT AND RECOMMENDATION OF THE GRANTING OF SUMMARY JUDGMENT TO DEFENDANTS WALL, MAROCCO AND WHITE"**

Defendants A.T. Wall, Joseph Marocco, and Melvin White (hereafter "Defendants") object to Plaintiff Reise's objection to Magistrate Judge Hagopian's June 13, 2005 Report and Recommendation (hereafter "R&R") that Defendants' Motion for Summary Judgment be granted. In his objection, Reise raises two issues.

First, Reise claims that contrary to the R&R, he did file a memorandum in opposition to Defendants' Motion for Summary Judgment, which was 42 pages in length with 1.5 line spacing and 89 exhibit pages. In a related argument, Reise also claims that despite Magistrate Judge Hagopian's April 14, 2005 Order, which permitted Reise to file only a 35 page memorandum with 70 exhibit pages (same as Defendants), Reise protests that he should not have been subject to these "same page limitations," see Reise's Objection to R&R, page 2, and instead, should have been allowed to file his 42 page memorandum, with 89 exhibit pages. The torturous travel underpinning Reise's arguments are well known to this Honorable Court.

On January 20, 2005, Defendants filed their Motion for Summary Judgment. Prior to the submission of Defendants' Memorandum in support of Summary Judgment, Defendants moved, and this Honorable Court granted, Defendants' motion to file a memorandum in excess of Amended General Order 2002-01, specifically 35 pages and 70 exhibit pages. Defendants timely filed their Motion.

On or about March 10, 2005, Reise attempted to file a response entitled "Plaintiff Stephen Reise's Counter Motion for Summary Judgment and Response to Defendant A.T. Wall, Joseph Marocco & Melvin White's Motion for Summary Judgment." Reise's memorandum was 42 pages in length and contained 89 exhibit pages. As Reise himself would later acknowledge in court pleadings, his March 10, 2005 filing violated both Amended General Order 2002-01 and Magistrate Judge Hagopian's February 1, 2005 Order that no further motions be filed without leave of court.[1] By Order dated March 15, 2005, Reise's filing was returned for violating Amended General Order 2002-01 and the Court's February 1, 2005 Order.

Thereafter, on or about March 31, 2005, Reise filed his motion for leave to file his motion in excess of Amended General Order 2002-01, specifically Reise sought to file a 42 page memorandum and 89 exhibit pages. On April 14, 2005, Magistrate Judge Hagopian granted Reise's motion, stating that "Plaintiff's memorandum shall not exceed 35 pages and his exhibits shall not exceed 70 pages." Magistrate Judge Hagopian's Order also permitted Reise to file his opposition memorandum by April 25, 2005, but warned "no further extensions will be permitted." See Docket Entry # 297.

---

[1] See Reise's Objection to June 13, 2005 Memorandum and Order, p. 2 ("The plaintiffs pleading of his caption referred to the response of summary judgment as a countermotion, [r]equiring it to file leave of court to be submitted was an oversight of the plaintiff."); id. at p. 4 ("I have a claimed right to not be held to the page limitations.").

Unsatisfied with the April 14, 2005 Order allowing a 35 page/70 exhibit page memorandum to be filed, on April 18, 2005, Reise filed a "Motion for Leave to File Instanter, and Exceed the Page Limitations by Seven Pages of Memorandum and Nineteen Pages of Exhibits." On or about this same time, April 18, 2005, and in direct violation of the April 14, 2005 Order, Reise also re-filed his memorandum, which was again 42 pages in length and contained 89 exhibit pages.[2] By Order dated April 26, 2005, this memorandum was returned to Reise for "failure to comply with this Court's Order of April 14, 2005, limiting the page limits of his Memorandum to 35 pages and his appendices to 70 pages." Magistrate Judge Hagopian's Order also indicated that Reise's filing violated the February 1, 2005 Order, requiring leave to file a "Counter Motion for Summary Judgment." Thereafter, Reise filed an Objection with Judge Lisi to the April 26, 2005 Order wherein he requested that he be allowed to file his memorandum opposing/moving for summary judgment and praying that he "not be subject to the page limitations set in Magistrate Hagopian's April 14, 2005 order." See Reise's Objection to Magistrate Judge Hagopian's April 26, 2005 Order, p. 5. On May 10, 2005, Judge Lisi denied Reise's Objection. See Docket Entry # 302. Presently, Reise has petitioned the First Circuit Court of Appeals to review this interlocutory order and has been ordered to show cause why the appeal should not be dismissed as interlocutory. At the time of this writing, the First Circuit has yet to issue its Order.

Notwithstanding the foregoing events, on or about May 2, 2005, Reise filed a new motion seeking leave to file a motion in support of summary judgment, as required by the February 1, 2005 Order, as well as seeking leave to once again exceed the 35 page/70

[2] It does not appear that Defendants received a copy of the re-filed memorandum.

exhibit page limitations imposed by the April 14, 2005 Order. By Memorandum and Order dated June 13, 2005, Magistrate Judge Hagopian denied Reise's Motion, stating, inter alia,:

> "plaintiff seeks leave again, to file a Counter Motion and Response out-of-time, with no explanation as to why he has continuously failed to comply with this Court's directives, other than blaming the Court for his own shortfalls. Without an adequate explanation, this Court is hard-pressed to find any basis to permit leave to file the motion and objection, and extend time again."

On the same date, June 13, 2005, Magistrate Judge Hagopian issued the instant R&R, granting Defendants' Motion for Summary Judgment based upon Reise's failure to exhaust his administrative remedies as required by 42 U.S.C. § 1997(e), the Prison Litigation Reform Act (hereafter "PLRA").

1. **Reise Did Not File an Objection**

In pressing the first of his two arguments, Reise, without any citation to authority, continues to argue that he should not be subject to the same 35 page/70 exhibit page limitations as Defendants and that, in contrast to the R&R, Reise contends that he did file a memorandum in opposition to summary judgment. On the first point, Reise takes great liberty in arguing that he is unfairly subject to the same page limitations as Defendants. In fact, as opposed to Defendants' memorandum, which was double spaced, Reise's memorandum appears to be, at best, only 1.5 spaced. This difference is not insignificant. For instance, Defendants' 35 page memorandum is double spaced and totals 790 lines, whereas Reise's 42 page, 1.5 spaced, memorandum totals 1,513 lines – almost double. Because of spacing discrepancies, the 42 page memorandum that Reise seeks to submit and argues is only seven (7) pages longer than Defendants' is actually the equivalent of a

double spaced memorandum 69 pages in length.[3] In fact, the 35 page memorandum, 1.5 line spacing, that this Honorable Court has permitted Reise to file, is actually the equivalent of a 58 page double spaced memorandum. By squeezing more information onto the same amount of pages, this Honorable Court has already shown great patience in allowing Reise to far exceed the amount of information Defendants submitted.

Moreover, Reise has presented no argument concerning how Magistrate Judge Hagopian abused his discretion by imposing such an already lenient page limitation that would allow Reise to file the equivalent of a 58 page double spaced memorandum. In In re M.S.V., Inc., 892 F.2d 5, 6 (1st Cir. 1989)(Breyer, J.), the Court of Appeals imposed double costs to a litigant who filed an "overly long (sixty instead of fifty) page brief in this [C]ourt." The First Circuit explained:

> "[w]e have learned, through experience, that it is typically the shorter briefs that are the most helpful, perhaps because the discipline of compression forces the parties to explain clearly and succinctly what has happened, the precise legal issue, and just why they believe the law supports them. Be that as it may, we believe it appropriate to discourage the filing of excessively lengthy briefs in this court." Id. at 6 (first emphasis in original, second emphasis added).

Considering the First Circuit's admonition, there is nothing inappropriate about Magistrate Judge Hagopian's multiple orders limiting Reise's response to 35 pages, which is the equivalent of a 58 page double spaced memorandum. Moreover, because Reise's Objection to Magistrate Judge Hagopian's page limitation orders have already been upheld by this Honorable Court, Reise is estopped from relitigating this issue. See

[3] Reise's 42 page memorandum contains 1,513 lines, which were manually counted. Using a guideline of 22 lines per double spaced page, it is estimated that Reise's 42 page memorandum is the equivalent of a double space memorandum 68.8 pages in length.

May 10, 2005 Order (Lisi, J); Docket Entry # 302. See also Gonzalez-Pina v. Rodriguez, 407 F.3d 425, 430 (1st Cir. 2005)(collateral estoppel).

Reise's related objection concerning Magistrate Judge Hagopian's determination that he did not file a memorandum is merely a matter of semantics. The foregoing travel makes clear that Reise twice attempted to file an opposition/supporting memorandum, though these filing were rejected for violations of Amended General Order 2002-01 and the Court's February 1, 2005 Order. There is no dispute that Reise has never filed a memorandum opposing summary judgment that did not violate the Court's orders and Reise presents no arguments or evidence that Magistrate Judge Hagopian abused his discretion in rejecting Reise's violative filings. See Eagle Eye Fishing Corporation v. United States Department of Commerce, 20 F.3d 503, 506 (1st Cir. 1994)(pro se status "is not 'a license not to comply with relevant rules of procedural and substantive law.'").

Lastly, Reise's complaint that he did not have ample time to seek review and address any problems inherent in his memorandum is meritless. With respect to this argument, Reise appealed the April 26, 2005 Order/May 10, 2005 Denial to the First Circuit pursuant to 28 U.S.C. § 1292(b), and although Reise has every right to seek review, by its very own terms 28 U.S.C. § 1292(b) states that "application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order." (Emphasis added). Accordingly, while purportedly attempting to proceed pursuant to one provision of § 1292(b), Reise turned a blind eye to the provision of § 1292(b) that provided that an appeal shall not stay the proceedings in the district court. Having not received an order either reversing or staying the District Court's proceedings, it was incumbent upon Reise to file a

memorandum that complied with this Court's Rules and Orders. Reise did not, and has not, done this.

2. **Reise Failed to Exhaust his Administrative Remedies**

Reise's second argument concerns his assertion that, for various reasons, the PLRA's exhaustion requirement, codified in 42 U.S.C. § 1997(e), is inapplicable to him; and therefore, Magistrate Judge Hagopian erred by recommending that summary judgment be granted on this basis. As detailed above, Reise's argument was never presented to Magistrate Judge Hagopian, and consequently, is being pressed at this stage for the first time.

In Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985, 990-91 (1st Cir. 1988), the Court of Appeals examined an appeal where a magistrate judge recommended summary judgment be granted to a defendant, only to have the plaintiff raise issues to the district court judge not previously presented to the magistrate judge. The First Circuit concluded that although the Federal Rules of Civil Procedure allow a party to file an objection to a report and recommendation, "[t]he rule does not permit a litigant to present new initiatives to the district judge." Id. at 990. The First Circuit added that it "hold[s] categorically that an unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate." Id. at 990-91. Later in its Opinion, the Court explained that "it would be fundamentally unfair to permit a litigant to set its case in motion before the magistrate, wait to see which way the wind was blowing, and – having received an unfavorable recommendation – shift gears before the district judge." Id. at 991. The Court of Appeals latter observation is precisely what Reise seeks to do here.

Having never presented this issue to Magistrate Judge Hagopian, Reise now seeks to assign error to the R&R that summary judgment be granted based upon his failure to exhaust his administrative remedies. In doing so, Reise does not contradict the undisputed fact that he never filed a grievance. Instead, without distinguishing which of his myriad allegations he is referring to, Reise broadly claims he could not file a grievance because he was misled and administrative procedures where not available.

To support this allegation, Reise purports to quote and reference a Handbook provided to all inmates, which according to Reise states that with respect to a grievance form a "superior officer must sign and date in the margins of the form." See Reise Objection to R&R, page 7. According to Reise, the foregoing Handbook provision is misleading because when he approached a deputy warden and a lieutenant to sign and accept his grievance, these individuals informed him that he must submit his grievance to Lieutenant Flynn, who is the designated grievance officer for the facility where Reise is incarcerated. Reise appears to believe that this procedure – of having to submit a grievance to the designated grievance coordinator – is at odds with the Handbook provision, which Reise represents "reflects that any superior officer can sign the grievance." Id. at page 8. Although the foregoing explanation may fit neatly into Reise's argument that he was mislead, and therefore the exhaustion requirement should not apply to him, the actual text of the Handbook that Reise attaches as Exhibit B does not support his characterizations. In fact, Section 5 actually states that the "Superior Officer accepting the grievance must sign and date in the margins of the form" that the grievance is received. (Emphasis signifying verbiage omitted by Reise in his Memorandum). Pursuant to the actual text of Section 5, a grievance must be signed only by the "superior

officer accepting the grievance," and not any "superior officer" as Reise claims. Such a policy, of course, is necessary in order to ensure that all grievances are processed in an orderly and uniform manner. As Reise himself sets forth in his Objection, when he approached a deputy warden and a lieutenant to sign and accept his grievance, he was expressly directed to see the Lieutenant designated as the Grievance Coordinator. This process, where Reise is expressly informed by the Handbook and told by staff that grievance forms must be submitted directly to the designated grievance officer is hardly misleading or unknown by Reise. In fact, Reise's Objection and attached Exhibit B make clear that this process was available and known to Reise.[4]

Lastly, Reise groups all the allegations comprising his lawsuit into one and broadly proclaims that the R&R should be denied because all his allegations constitute a non-grieveable area pursuant to Department of Corrections policy, i.e., decisions by qualified medical personnel related to an inmate's health.[5] None of these allegations

---

[4] Several of the cases Reise cites involving prisoner cases concerned Motions to Dismiss, and therefore, given the deferential standard of review is distinguishable from the instant matter. See Lee v. Walker, 2002 WL 980764 (D. Kan. 2002)(inmate alleged grievances routinely filed in manner different than stated in handbook); Hall v. Sheahan, 2001 WL 111019 (N.D. Ill. 2001)(inmate alleged unaware policy existed); McGrath v. Johnson, 67 F.Supp.2d 499, 511 (E.D. Penn. 1999)("for purposes of surviving a motion to dismiss, [plaintiff] has sufficiently alleged that there was no avenue for him to pursue administrative remedies").

[5] Since Reise does not outline his allegations, it bears noting that his lawsuit relates to allegations concerning that: (1) replacement parts for his C-PAP machine were not ordered; (2) medical orders were not followed; (3) the severity of his medical condition was withheld from him; (4) the constitutionality of policies/practices relating to how a medical request slip is filled out, the sick call window closing at 8:30 a.m., the lack of an on-duty on-site nurse during sleeping hours, the lack of an on-duty on-site psychiatrist, the co-pay policy being misapplied by officials, and certain deficient dentistry practices; (5) being fired from his prison employment; (6) an extension cord being removed from his cell while in segregation; (7) the urine policy allegedly discriminating against him; (8)

relate to "decisions by qualified medical personnel related to an inmate's health" and Reise provides no support to the contrary. In fact, the great majority of these complaints have no relation whatsoever to Reise's medical needs. Instead, as outlined in Defendants' Memorandum in Support of Summary Judgment, these allegations fall squarely within the expressly stated grievable areas of "interpretation and application of policies, rules, and procedures of the facilities and/or Department" and "any other matter relating to access to privileges, programs, and/or services; conditions of care or supervision; and living facility conditions." See Reise's Exhibit A, ¶ 5 (emphasis added). Moreover, two of the three Defendants – Director A.T. Wall and Associate Director of Health Care Services Joseph Marocco – are administrators without medical degrees, and therefore, do not even constitute "qualified medical personnel" within the meaning of the exemption Reise claims to be applicable.

## III. **Conclusion**

The uncontradicted facts establish that Reise has failed to exhaust his administrative remedies as required by the PLRA and now, only after Magistrate Judge Hagopian recommended summary judgment on this ground, does Reise, for the first time, attempt to construct a basis for failure to comply with federal law. For the reasons discussed, Defendants respectfully pray that the recommendation granting summary judgment be accepted.

Respectfully Submitted,
Defendants, A.T. Wall, Joseph Marocco
and Melvin White

---

sleeping on dirty sheets with no blanket for two weeks in August 2004; and (9) an alleged deprivation of a right to a single bunk cell.