**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

**Stephen Reise**

**vs.** **C.A. No. 04-158 (ML)**

**Ashbel T. Wall, Joseph Marocco,**
**Scott Allen, Baruh Motola,**
**Mel White, sued in their individual**
**and official capacities**

**DEFENDANT, BARUH MOTOLA, M.D.'s OBJECTION TO PLAINTIFF'S "OBJECTION TO REPORT AND RECOMMENDATION OF A DENIAL OF PRELIMINARY INJUNCTION ON JUNE 16, 2005"**

Now comes the Defendant Baruh Motola, M.D. and hereby joins co-defendants Ashbel T. Wall, Joseph Marocco, and Melvin White's objection to plaintiff's "Objection to Report and Recommendation of a Denial of Preliminary Injunction on June 16, 2005". Defendant hereby incorporates by reference the argument set forth in co-defendants Objection and Memorandum of Law in support thereof.

Defendant, Baruh Motola,
By his attorneys,

Tate & Associates

Alan R. Tate, Esquire (#1647)
Jeffrey G. Latham, Esquire (#6264)
321 South Main Street, Suite 300
Providence, RI 02903
(401) 421-7400
Fax (401) 351-3239

**CERTIFICATION**

I hereby certify that a true copy of the within was mailed, postage prepaid, on this 4th day of August, 2005, to the following:

Stephen Reise, Pro Se
P.O. Box 8274
Cranston, RI 02920

Michael W. Field, Esquire
Office of Attorney General
150 South Main Street
Providence, RI 02903

Jay M. Elias, Esquire
Ratcliffe, Burke, Harten & Elias
1600 Financial Plaza
Providence, RI 02903

______________________________

3843.obj-denpi

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

**Stephen Reise**

**vs.** **C.A. No. 04-158 (ML)**

**Ashbel T. Wall, Joseph Marocco,
Scott Allen, Baruh Motola,
Mel White, sued in their individual
and official capacities**

**DEFENDANT, BARUH MOTOLA, M.D.'s MEMORANDUM OF LAW IN SUPPORT OF HIS OBJECTION TO PLAINTIFF'S "MOTION FOR LEAVE TO APPEAL IN FORMA PAUPERIS"**

Now comes the Defendant, Baruh Motola, M.D., and hereby objects to Plaintiff's "Motion For Leave to Appeal in Forma Pauperis". Plaintiff has filed numerous motions to proceed *in forma pauperis*. The Court has considered this issue each time, and each time has denied this motion. Pursuant to a Court Order entered into on February 1, 2005, by Magistrate Hagopian, no further motions shall be filed in this case except by leave of Court approved by Magistrate Hagopian. The Plaintiff has clearly disregarded the Court Order of February 1st and taken it upon himself to continue to file motions beyond the close of discovery. For this reason alone, the Plaintiff's Motion to Appeal *In Forma Pauperis* should be denied.

Even if the Court choices to accept the Plaintiff's motion aside from being filed beyond the close of discovery, the Court should still deny the Plaintiff's motion as he has failed to meet the requirements set forth in 28 U.S.C. § 1915 (a)(2). The Plaintiff

has failed to provide a certified copy of his prison trust fund account statement for the six (6) months preceding the filing of the Complaint or Notice of Appeal. (See attached copy of 28 U.S.C. § 1915(a)(2). The Plaintiff is simply seeking to perpetuate an issue that is procedurally deficient and without merit. Access to the federal courts is necessary to protect the prisoner's constitutional rights; however, "the pauper's affidavit should not be a broad highway" into the federal system. **Phillips v. Mashburn**, 746 F.2d 782 (11th Cir. 1984) (citing **Jones v. Ault**, 516 F.2d 898 (5th Cir. 1975). "Indigence does not create a constitutional right to the expenditure of public funds and the valuable time of the courts in order to prosecute an action which is totally without merit". **Id**. (citing **Collins v. Cundy**, 603 F.2d 825, 828 (10th Cir. 1979). The Plaintiff can not use an ***in forma pauperis*** motion as his free ticket into Court to drag this case on and on by filing continuous appeals and objections.

Therefore, Defendant Motola prays that Plaintiff's motion be denied.

Defendant, Baruh Motola,
By his attorneys,

Tate & Associates

Alan R. Tate, Esquire (#1674)
Jeffrey G. Latham, Esquire (#6264)
321 South Main Street, Suite 300
Providence, RI 02903
(401) 421-7400
Fax (401) 351-3239

**CERTIFICATION**

I hereby certify that a true copy of the within was mailed, postage prepaid, on this 4th day of August, 2005 to the following:

Stephen Reise, Pro Se
P.O. Box 8274
Cranston, RI 02920

Michael W. Field, Esquire
Office of Attorney General
150 South Main Street
Providence, RI 02903

Jay M. Elias, Esquire
Ratcliffe, Burke, Harten & Elias
1600 Financial Plaza
Providence, RI 02903

Nancy Davis

*3843.memo-obj-mtifp*

## § 28 USC § 1915

**United States Code (USC)**

**Title 28 - JUDICIARY AND JUDICIAL PROCEDURE**

**Chapter 123 - FEES AND COSTS**

**28 USC § 1915 Proceedings in forma pauperis**

---

**28 USC § 1915 Proceedings in forma pauperis**

PART V - PROCEDURE

(a)(1) Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

(2) A prisoner seeking to bring a civil action or appeal a judgment in a civil action or proceeding without prepayment of fees or security therefor, in addition to filing the affidavit filed under paragraph (1), shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint or notice of appeal, obtained from the appropriate official of each prison at which the prisoner is or was confined.

(3) An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

(b)(1) Notwithstanding subsection (a), if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of -

(A) the average monthly deposits to the prisoner's account; or

(B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

(2) After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

(3) In no event shall the filing fee collected exceed the amount of fees permitted by statute for the commencement of a civil action or an appeal of a civil action or criminal judgment.

(4) In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.

(c) Upon the filing of an affidavit in accordance with subsections (a) and (b) and the prepayment of

any partial filing fee as may be required under subsection (b), the court may direct payment by the United States of the expenses of

(1) printing the record on appeal in any civil or criminal case, if such printing is required by the appellate court;

(2) preparing a transcript of proceedings before a United States magistrate judge in any civil or criminal case, if such transcript is required by the district court, in the case of proceedings conducted under section 636(b) of this title or under section 3401(b) of title 18, United States Code; and

(3) printing the record on appeal if such printing is required by the appellate court, in the case of proceedings conducted pursuant to section 636(c) of this title. Such expenses shall be paid when authorized by the Director of the Administrative Office of the United States Courts.

(d) The officers of the court shall issue and serve all process, and perform all duties in such cases. Witnesses shall attend as in other cases, and the same remedies shall be available as are provided for by law in other cases.

(e)(1) The court may request an attorney to represent any person unable to afford counsel.

(2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that -

(A) the allegation of poverty is untrue; or

(B) the action or appeal -

(i) is frivolous or malicious;

(ii) fails to state a claim on which relief may be granted; or

(iii) seeks monetary relief against a defendant who is immune from such relief.

(f)(1) Judgment may be rendered for costs at the conclusion of the suit or action as in other proceedings, but the United States shall not be liable for any of the costs thus incurred. If the United States has paid the cost of a stenographic transcript or printed record for the prevailing party, the same shall be taxed in favor of the United States.

(2)(A) If the judgment against a prisoner includes the payment of costs under this subsection, the prisoner shall be required to pay the full amount of the costs ordered.

(B) The prisoner shall be required to make payments for costs under this subsection in the same manner as is provided for filing fees under subsection (a)(2).

(C) In no event shall the costs collected exceed the amount of the costs ordered by the court.

(g) In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted,

unless the prisoner is under imminent danger of serious physical injury.

(h) As used in this section, the term "prisoner" means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.

(June 25, 1948, ch. 646, 62 Stat. 954; May 24, 1949, ch. 139, Sec. 98, 63 Stat. 104; Oct. 31, 1951, ch. 655, Sec. 51(b), (c), 65 Stat. 727; Pub. L. 86-320, Sept. 21, 1959, 73 Stat. 590; Pub. L. 96-82, Sec. 6, Oct. 10, 1979, 93 Stat. 645; Pub. L. 101-650, title III, Sec. 321, Dec. 1, 1990, 104 Stat. 5117; Pub. L. 104-134, title I, Sec. 101[(a)] [title VIII, Sec. 804(a), (c)-(e)], Apr. 26, 1996, 110 Stat. 1321, 1321-73 to 1321-75; renumbered title I, Pub. L. 104-140, Sec. 1(a), May 2, 1996, 110 Stat. 1327.)

---

© Lawriter Corporation. All rights reserved.

The Casemaker™ Online database is a compilation exclusively owned by Lawriter Corporation. The database is provided for use under the terms, notices and conditions as expressly stated under the online end user license agreement to which all users assent in order to access the database.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

STEPHEN REISE

v. C.A. No. 04 - 158 ML

A.T. WALL, et al.

**Report and Recommendation**

Jacob Hagopian, Senior United States Magistrate Judge

Stephen Reise ("Reise" or "plaintiff"), *pro se*, an inmate legally incarcerated at the Rhode Island Department of Corrections ("DOC"), Adult Correctional Institutions, filed a Complaint and named as defendants Ashbel T. Wall, Joseph Marocco, Dr. Scott Allen, Dr. Baruh Motola, and Melvin White, current or former employees or officials at the DOC. Currently before the Court is Dr. Motola's motion for summary judgment pursuant to Fed. R. Civ. P. 56(c). Plaintiff has objected thereto. This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for a report and recommendation. For the reasons that follow, I recommend that Dr. Motola's motion for summary judgment be granted. A hearing was not necessary.

**Undisputed Facts**

On or about October 30, 1999, plaintiff began his incarceration at the Rhode Island Department of Corrections. On November 24, 1999, Dr. Motola conducted a physical examination of the plaintiff. Thereafter, plaintiff was seen numerous times by various physicians while incarcerated.

In July 2001, following complaints by other inmates of his snoring, plaintiff visited Dr. Motola. At that time, Dr. Motola ordered that the plaintiff have a polysomnogram, often referred



RECEIVED JUN 6 2005

306

to as a "sleep test." The sleep test was conducted at the DOC on August 21 to August 22, 2001 and the results were interpreted by Dr. Richard Millman, Director of the Sleep Disorders Centers of Lifespan Hospitals. Dr. Millman faxed his diagnosis to the DOC on September 12, 2001, determining that the plaintiff suffered from "a severe degree of obstructive sleep apnea." Dr. Millman recommended various options for treatment, including a Continuous Positive Airway Pressure ("CPAP") machine. Dr. Millman did not request or order that the plaintiff be seen by him further.

After receiving the diagnosis from Dr. Millman, a written notation was made on the diagnosis by Dr. Motola. There is a dispute as to what the notation reads. Plaintiff alleges that the notation reads "to be seen in <u>that</u> clinic," referring to a clinic at Lifespan Hospital. Dr. Motola, however, has indicated that the notation reads "to be seen in <u>the</u> clinic," and Dr. Motola indicated that he was referring to the DOC's in-house medical clinic.

On September 27, 2001, plaintiff learned of his diagnosis from another DOC doctor, defendant Dr. Allen. Dr. Allen ordered a CPAP machine to treat plaintiff's condition. Plaintiff subsequently received the machine and used it nightly.

On or about January 2003, plaintiff claims that the CPAP machine needed replacement parts. Plaintiff, however, never directly informed Dr. Motola that he needed replacement parts for his CPAP machine, nor did the plaintiff bring any additional medical issues relating his sleep apnea to Dr. Motola's attention.

Plaintiff has brought suit, principally alleging an Eighth Amendment violation, applicable to the states through the Fourteenth Amendment. Plaintiff claims that Dr. Motola failed to provide adequate medical care, including Dr. Motola's alleged failure to promptly provide replacement parts

for his CPAP machine. Plaintiff also alleges claims under the Fifth and Ninth Amendments and a state-law claim of medical malpractice.

**Discussion**

**A. Summary Judgment Standard**

Summary judgment's role in civil litigation is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Garside v. Osco Drug, Inc., 895 F.2d. 46, 50 (1st Cir. 1990). Summary judgment can only be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.

Rule 56 has a distinctive set of steps. When requesting summary judgment, the moving party must "put the ball in play, averring 'an absence of evidence to support a nonmoving party's case.'" Garside, 895 F.2d at 48 (quoting Celotex v. Catrett, 477 U.S. 317, 325 (1986)). The nonmovant then must document some factual disagreement sufficient to deflect brevis disposition. Not every discrepancy in the proof is enough to forestall summary judgment; the disagreement must relate to some issue of material fact. See Anderson v. Liberty Lobby Inc., 477 U.S. 242, 247-48 (1986).

On issues where the nonmovant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion. See id. at 256-57. This evidence "can not be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a fact finder must resolve at an ensuing trial." Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989). Evidence that is merely colorable or is not significantly probative cannot deter summary judgment. Anderson, 477 U.S. at 256-57.

**B. 42 U.S.C. § 1983**

Plaintiff has brought suit under 42 U.S.C. § 1983. Section 1983 provides, in pertinent part:

> Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. In order to maintain a section 1983 action, the conduct complained of must be committed by a "person" acting under color of state law and the conduct must have deprived the plaintiff of a constitutional right or a federal statutory right. Gomez v. Toledo, 446 U.S. 635, 640; see also Baker v. McCollan, 443 U.S. 137 (1979) (constitutional deprivations); Maine v. Thiboutot, 448 U.S. 1 (1980) (statutory deprivations). Here, there is no dispute that Dr. Motola acted under the color of state law. However, Dr. Motola asserts that the undisputed facts demonstrate that no Constitutional provisions were offended and that he is entitled to summary judgment. I agree.

**1. Plaintiff's Eighth and Fourteenth Amendment Claims.**

Plaintiff's primary basis for relief against Dr. Motola falls under the Eighth Amendment, applicable to the states via the Fourteenth Amendment. Plaintiff claims that Dr. Motola failed to provide adequate medical care, including Dr. Motola's alleged failure to provide in a timely fashion replacement parts for plaintiff's CPAP machine.

The Eighth Amendment provides: "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. The cruel and unusual punishments clause of the Eighth Amendment was designed to protect those convicted of crimes and limits the type of punishment that is imposed. Ingraham v. Wright, 430 U.S. 651, 664

(1977). After an individual is incarcerated, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment. Whitely v. Albers, 475 U.S. 312, 318-19 (1986). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause... ." Id. What is required to establish the unnecessary and wanton infliction of pain varies according to the nature of the alleged Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9 (1992).

Here, plaintiff alleges Dr. Motola failed to provide adequate medical care. The failure to provide medical attention to an injured prisoner can be an Eighth Amendment violation. See e.g. Layne v. Vinzant, 657 F.2d 468 (1st Cir. 1981); Rosen v. Chang, 758 F.Supp. 799 (D.R.I. 1991). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). In order to find deliberate indifference, there must be more than a showing that a physician was negligent in diagnosing or treating a patient. Id. Such negligence, if present, does not rise to the level of a Constitutional violation simply because the plaintiff is incarcerated. Id. Officials must intentionally delay or completely deny access to medical care. Id at 104-05.

Deliberate indifference to an inmate's medical needs requires a two part inquiry. First, the court must ask whether the inmate's medical needs are objectively serious (objective prong). The illness must have "been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Mahan v. Plymouth County House of Corrections, 64 F.3d 14, 18 (1st Cir 1995). Second, there must be an element of a culpable state of mind or reckless disregard rising to the level of criminal recklessness on the part of the defendant (subjective prong). Farmer v. Brennan, 511 U.S. 825, 826 (1994). The

"Eighth Amendment outlaws cruel and unusual punishments, ... and the failure to alleviate a significant risk that an official should have perceived but did not, while no cause for commendation, cannot be condemned as the infliction of punishment...." Id. Only when both prongs are met, can Dr. Motola be liable for an Eighth Amendment violation.

**a. Objective Prong**

Here plaintiff has set forth evidence demonstrating that he has an objectively serious medical need. Plaintiff has demonstrated that his condition, sleep apnea, has been diagnosed by Dr. Millman as "severe." See Defendant Motola's Exhibit A. Moreover, Dr. Millman indicated several treatment options to alleviate the plaintiff's severe condition. See id. Thus, plaintiff has set forth sufficient evidence to sustain his burden to demonstrate a serious medical need for Eighth Amendment purposes.

**b. Subjective Prong**

Since plaintiff has demonstrated that he has a serious medical need, the Court must next inquire into whether the plaintiff can demonstrate that Dr. Motola was deliberately indifferent to that need. In other words, plaintiff must set forth evidence that Dr. Motola had a culpable state of mind or reckless disregard rising to the level of criminal recklessness to plaintiff's serious medical need. See Farmer, 511 U.S. at 826.

In his Complaint, plaintiff claims that the delay in providing him with replacement parts for his CPAP machine constituted deliberate indifference. Plaintiff attempts to connect Dr. Motola to the alleged failure to provide such parts by identifying an appointment he had at the DOC's medical clinic regarding back pain on April 24, 2003. In the course of this appointment, plaintiff claims he spoke to a DOC Nurse about the status of his replacement parts for his CPAP machine. According

to plaintiff, the nurse indicated that the parts were requested. Also according to plaintiff, during his exchange with the nurse, Dr. Motola was present and presumably overheard the conversation. While this may be true, plaintiff never spoke directly to Dr. Motola regarding his alleged need for replacement parts, nor did the plaintiff relay to Dr. Motola any indication that his health was in jeopardy or his symptoms worsened due to the lack of timely replacement parts. The undisputed facts demonstrate the plaintiff and defendant Motola had no direct communications regarding plaintiff's request for replacement parts.

Even assuming *arguendo* that Dr. Motola did overhear the conversation, no evidence has been set forth by the plaintiff demonstrating that the plaintiff's condition was worsening or that the plaintiff had an increase in symptoms. Indeed, plaintiff made no complaints to Dr. Motola regarding his sleep apnea. Dr. Motola cannot be deliberately indifferent to something of which he did not know. See Farmer, 511 U.S. at 826.

Next, plaintiff attempts to establish conduct rising to the level of deliberate indifference by pointing to a notation which defendant Motola made on Dr. Millman's written diagnosis. The notation reads "9/12/01 To be seen in [the or that ] clinic." Plaintiff contends this was an instruction by either Dr. Motola or Dr. Millman to schedule a follow-up examination with Dr. Millman. Plaintiff argues that the failure to schedule such a follow-up examination with Dr. Millman demonstrates deliberate indifference.

While the parties dispute whether the notation reads "the" or "that," this is not a material dispute. The undisputed facts demonstrate that Dr. Millman did not write the notation, nor did Dr. Millman make any request or order that plaintiff be seen for a follow-up visit. See Deposition of Richard Millman, M.D., at 10 (12/15/04). The undisputed facts also demonstrate that Dr. Motola

made the notation to alert the DOC medical staff to schedule the plaintiff for an appointment in the DOC's medical clinic. See Defendant Baruh Motola's Memorandum of Law in Support of his Motion for Summary Judgment, Exhibit B at ¶ e, f, g. Indeed, that is where the plaintiff was seen. Plaintiff met with Dr. Allen on September 27, 2001 to review Dr. Millman's diagnosis. No evidence demonstrates any malfeasance on the part of Dr. Motola with respect to this notation. Plaintiff has set forth no evidence demonstrating that Dr. Motola withheld medical treatment by failing to schedule a follow-up appointment with Dr. Millman.

Plaintiff further claims that Dr. Motola concealed from him the true severity of his sleep apnea. Even if Dr. Motola had failed to fully inform plaintiff of the severity of his sleep apnea, no evidence has been presented to indicate that such a failure would rise to the level of deliberate indifference. Plaintiff's condition was diagnosed and he was provided equipment with which to treat the symptoms.

Plaintiff failed set forth any evidence whatsoever to demonstrate that Dr. Motola had a culpable state of mind or reckless disregard to the plaintiff's medical needs. See Farmer, 511 U.S. at 826. Plaintiff received treatment for his medical condition. Accordingly, I recommend that Dr. Motola's motion for summary judgment be granted on plaintiff's Eighth and Fourteenth Amendment claims.

**2. Plaintiff's Claims under the Fifth and Ninth Amendments.**

In his Complaint, plaintiff makes vague references to claims under the Fifth and Ninth Amendments. However, no evidence, nor any argument has been presented to sustain claims under these constitutional provisions. Accordingly, I recommend that Dr. Motola's motion for summary judgment be granted on plaintiff's Fifth and Ninth Amendment claims.

**3. Plaintiff's Constitutional Claims regarding the Policies and Practices at the Rhode Island Department of Corrections.**

Plaintiff also makes references to policies and / or practices at the Department of Corrections regarding a variety of aspects of inmate's lives. What plaintiff fails to do, however, is connect Dr. Motola to the policies or practices. That is, plaintiff fails to demonstrate that Dr. Motola has promulgated the challenged policies or is involved in any way in the adoption of those policies. Without personal involvement, Dr. Allen cannot be liable. Lopez Morales v. Otero de Ramos, 725 F.Supp. 106, 106-107 (D.P.R. 1989). A theory of *respondeat superior*, if that is what plaintiff alleges, will not suffice. Polk County v. Dodson, 454 U.S. 312, 325 (1981).

Accordingly, to the extent that plaintiff seeks to hold Dr. Motola liable, under various theories, for wrongful policies and / or practices, Dr. Motola's motion for summary judgment should be granted on these claims as well. I so recommend.

**C. Plaintiff's State Law Medical Malpractice Claim**

Finally, plaintiff asserts a claim under Rhode Island state law for medical malpractice. In medical malpractice actions, a plaintiff must establish the appropriate standard of care and a deviation therefrom by presenting competent medical expert testimony. Wilkenson v. Vesey, 295 A.2d 676 (R.I. 1972). The expert "must measure the care that was administered against the degree of care and skill ordinarily employed in like cases by physicians in good standing engaged in the same type of practice in similar localities." Richardson v. Fuchs , 523 A.2d 445, 448 (R.I. 1987)(citations omitted). The expert must explain "what proper procedures and alternatives are available to a physician ... [and] why the procedures followed by the defendant physician were negligent, and not legitimate alternatives." Sousa v. Chaset, 519 A.2d 1132, 1135 (R.I. 1987).

Here, plaintiff has failed to identify an expert to testify on his behalf, and failed to otherwise demonstrate that he possesses any evidence of the appropriate standard of care, any evidence demonstrating a deviation from the standard of care, or any evidence demonstrating causation to any injury. See e.g. Schenck v. Roger Williams General Hospital, 382 A.2d 514, 516-17 (R.I. 1977); Boccasile v. Cajun Music Limited, 694 A.2d 686, 690 (R.I. 1997). Without demonstrating that he possesses such evidence, plaintiff's medical malpractice claim cannot go forward. Plaintiff may not rely upon his own speculative conclusions on how he thinks he should have been treated. Accordingly, Dr. Motola's motion for summary judgment should be granted on plaintiff's medical malpractice claims. I so recommend.

**Conclusion**

For the reasons set forth above, I recommend that Dr. Motola's motion for summary judgment be granted on all of plaintiff's claims. Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. Fed. R. Civ. P. 72(b); Local Rule 32. Failure to file timely, specific objections to this report constitutes waiver of both the right to review by the district court and the right to appeal the district court's decision. United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1986)(per curiam); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

Jacob Hagopian
Senior United States Magistrate Judge
June 2, 2005

# 746 F.2d 782 Phillips v. Mashburn



BENJAMIN FRANKLIN PHILLIPS, PLAINTIFF-APPELLANT,v.TELFAIR J. MASHBURN, JUDGE, MOBILE, AL.; JOSEPH D. QUINLI v. N, JR., ATTY.; REYNOLDS T. ALONZO, JR., ATTY.; A. NEIL HUDGENS & ASSOCIATES, JOHN W. COLEMAN & ASSOCIATES, JOHN W. COLEMAN & ASSOCIATES, DEFENDANTS-APPELLEES

[Cite as Phillips v. Mashburn, 746 F.2d 782 (11th Cir. 11/15/1984)]

[1] U.S. Court of Appeals, Eleventh Circuit

[2] No. 83-7629

[4] November 15, 1984

[6] Appeal from the United States District Court for the Southern District of Alabama.

[7] Benjamin Franklin Phillips, Pro Se, Holman Station, Al, for Appellant.

[8] John Coleman, Mobile, Al, for Appellant.

[9] Tjoflat, Hill and Anderson, Circuit Judges.

[10] Author: Per Curiam

[11] Benjamin Franklin Phillips, an Alabama state prisoner, brings this 42 U.S.C. § 1983 (1982) action in forma pauperis against a state court judge and the attorneys who represented him in a state court criminal proceeding before another judge. The district court, acting upon a magistrate's recommendation, summarily dismissed the action as frivolous before service of process on the defendants pursuant to 28 U.S.C. § 1915(d)(1982). We affirm.

[12] I.

[13] Following Phillips' conviction in state court, he brought a state court action for legal malpractice against the attorneys who represented him during his criminal proceedings. Judge Mashburn dismissed the malpractice case. Phillips, proceeding in forma pauperis and pro se, then filed this suit in the district court under 42 U.S.C. § 1983 (1982), claiming that Judge Mashburn and the defendant attorneys conspired together to deprive Phillips of his right to pursue his malpractice action in the courts. The conspiracy was alleged in a conclusory manner without any operative facts. Phillips sought $400,000 in damages.

[14] The Magistrate recommended that Phillips' motion to proceed in forma pauperis be granted and that his complaint be summarily dismissed as frivolous for attempting to retry the state court malpractice litigation under the auspices of section 1983. The district court dismissed the action without prejudice and denied leave to appeal in forma pauperis. This court granted the **motion to appeal in forma pauperis**.

[15] II.

[16] 28 U.S.C. § 1915(a)(1982) allows a person, unable to afford the cost of litigation, to commence an action in federal court without the prepayment of fees. The court, however, has a special measure of control to ensure this privilege is not abused; 28 U.S.C. § 1915(d) provides that in forma pauperis proceedings may be dismissed sua sponte by the court "if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious."

[17] Dismissal of a pro se complaint by a prisoner pursuant to section 1915(d) involves competing policy considerations. On the one hand, access to the federal courts is necessary to protect the prisoner's constitutional rights. See Harmon v. Berry, 728 F.2d 1407, 1409 (11th Cir. 1984). To protect such access, pro se complaints are liberally construed, and the lay pleader is not held to the more rigorous standard for formal pleadings prepared by attorneys. Haines v. Kerner, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); Harmon, 728 F.2d at 1409. This circuit has adopted the standard in Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957), to determine the sufficiency of a complaint for purposes of section 1915(d), i.e., that "'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Pace v. Evans, 709 F.2d 1428, 1429 (11th Cir. 1983) (citing Conley v. Gibson, supra).

[18] The trial court must develop the facts of the pro se case until satisfied about its lack of merit before dismissal under section 1915(d). Jones v. Bales, 58 F.R.D. 453, 464 (N.D.Ga.1972); aff'd, 480 F.2d 805 (5th Cir. 1973).(fn1) The court usually requires service of process and the defendant's answer before making such a decision. This expansion of the record protects the unskilled litigant by enabling the court to make a more informed decision about the action. Anderson v. Coughlin, 700 F.2d 37, 41 (2d Cir. 1983). Of course, the court may dismiss sua sponte under section 1915(d) prior to service of process. Harkins v. Eldredge, 505 F.2d 802, 804 (8th Cir. 1974).

[19] On the other hand, there are compelling reasons for immediately dismissing frivolous actions by state prisoners. We have previously adopted the following rationale:

[20] Persons proceeding in forma pauperis are immune(fn2) from imposition of costs if they are unsuccessful; and because of their poverty, they are practically immune from later tort actions for "malicious prosecution" or abuse of process. Thus indigents, unlike other litigants, approach the courts in a context where they have nothing to lose and everything to gain. The temptation to file complaints that contain facts which cannot be proved is obviously stronger in such a situation. For convicted prisoners with much idle time and free paper, ink, law books and mailing privileges the temptation is especially strong. As Justice Rehnquist has noted, "Though [an inmate] may be denied legal relief, he will nonetheless have obtained a short sabbatical in the nearest federal courthouse." Cruz v. Beto, 405 U.S. 319, 327, 92 S. Ct. 1079, 1084, 31 L. Ed. 2d 263 (1972) (dissenting).

[21] Jones v. Bales, supra at 463. Such prison recreation imposes significant costs on the judicial system and the general public. Frivolous suits unduly burden the courts, obscure meritorious claims, and require innocent parties to expend significant resources in their defense. Finally, meritless actions offer inmates an unrestricted method of harassing prison and law enforcement officials.

[22] The pauper's affidavit should not be a broad highway into the federal courts. Jones v. Ault, 67 F.R.D. 124, 127 (S.D.Ga. 1974), aff'd mem., 516 F.2d 898 (5th Cir. 1975). Indigence does not create a constitutional right to the expenditure of public funds and the valuable time of the courts in order to prosecute an action which is totally without merit. Collins v. Cundy, 603 F.2d 825, 828 (10th Cir. 1979). Clearly, these considerations counsel that the district court must have wide discretion in denying a motion to proceed as a pauper when the complaint is frivolous. It is within this context that we examine Phillips' claim that his in forma pauperis suit should not have been dismissed as frivolous until after the

defendants had been compelled to respond.

[23] III.

[24] We note that the district court incorrectly dismissed Phillips' action as an attempt to retry the state lawsuit. Phillips' allegations, if proven, might entitle him to some relief: a state court judge, although immune from damages under section 1983, when acting in conspiracy with private defendants, can supply the state action nexus required for a section 1983 suit. Dennis v. Sparks, 449 U.S. 24, 27-28, 101 S. Ct. 183, 186-7, 66 L. Ed. 2d 185 (1980).

[25] Phillips' complaint, however, makes no particularized showing that a conspiracy existed between the defendant lawyers and the judge; it only alleges that the defendants won the lawsuit. Obviously, being on the winning side of a lawsuit does not make a defendant a co-conspirator or a joint actor with the judge who presided over the case. Id., at 28, 101 S. Ct. at 186. We must therefore decide whether the district court erred by dismissing sua sponte an in forma pauperis pro se complaint which alleged a cognizable section 1983 action based on a conspiracy between a state judge and private defendants, but contained inadequate supporting factual averments.

[26] We hold that the district court properly exercised its discretion in dismissing the complaint pursuant to section 1915(d). The naked assertion of a conspiracy between a state judge and private defendants without supporting operative facts provides an insufficient state action nexus for a section 1983 action. Sooner Products Co. v. McBride, 708 F.2d 510, 512 (10th Cir. 1983). To secure the privilege of proceeding in federal court without the prepayment of fees, the in forma pauperis plaintiff must provide an adequate basis for believing a conspiracy existed before the court is required to compel the defendants to answer. This is necessary to protect the courts, state officials, and private defendants from malicious or frivolous suits filed by inmates with "nothing to lose." Cruz v. Beto, supra, at 327, 92 S. Ct. at 1084. The district court amply protected the nonprofessional, pro se litigant in this situation by dismissing the suit without prejudice. Thus, Mr. Phillips is free to file a new complaint, in forma pauperis, alleging sufficient facts to substantiate the conspiracy.

[27] AFFIRMED.

---

Footnotes: (Opinion)

[28] 1. In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[29] 2. But see Harris v. Forsyth, 735 F.2d 1235 (11th Cir. 1984) (permitting assessment of costs against an appellant proceeding in forma pauperis is within the discretion of the court).

© Lawriter Corporation. All rights reserved.

The Casemaker™ Online database is a compilation exclusively owned by Lawriter Corporation. The database is provided for use under the terms, notices and conditions as expressly stated under the online end user license agreement to which all users assent in order to access the database.